JACOB MAECK AND JOSEPH CLARK *v.* PEGGY NASON.

Where the will of a testator contained a clause in these words,—" I give and grant to my beloved son, John Nason, all my property, after the decease of my beloved wife, or marriage, he paying the legacies herein mentioned, also to my daughter Peggy Nason $200, to be paid as above mentioned, the horse I now own," (describing it,) "and to live and remain, so long as she is unmarried, in my house, and enjoy the same privileges as she now does, and also one cow,"—it was held, that the intent of the testator was plain, that Peggy Nason should have a right to all the privileges in the house, which she had before enjoyed.

And it was held, that the extent of the privilege, which the devisee had enjoyed in the house of her father, previous to his death, might be proved by parol evidence, for the purpose of giving effect to the devise.

And, the extent of such previous privilege having been shown by parol evidence, it was also held, that the devise was not void for uncertainty, but that, the previous privilege, which the will had changed into a right, being ascertained by applying the measure specified in the will, the devisee was entitled to the benefit of it.

And it was also held, that the right thus acquired was a personal privilege, which the devisee could not assign, but which she might waive; and that therefore, in an action of ejectment brought against her by those claiming under the devise in the will to John Nason, testimony was admissible, to show her continued enjoyment of her right in the house from the time of her father's decease to the time of trial, for the purpose of showing that she had not abandoned the right; —although the court inclined to the opinion, that this evidence was also admissible, for the purpose of showing a practical construction of the extent of the right under the devise, by those claiming adverse to the devisee, and who, it appeared, had always continued in the occupancy, under the will, of that part of the house not occupied by the defendant.

And it appearing, by the evidence, that the devisee, previous and subsequent to the death of her father, had occupied a particular room in the house as a sleeping room, it was held, that she acquired, under the devise, the right to the exclusive occupation of this room, free from all intrusion.

EJECTMENT for the south part of a house in St. Albans, called the Nason house. Plea, the general issue, and trial by the court, November Adjourned Term, 1848,—ROYCE, Ch. J., presiding.

On trial the plaintiffs read in evidence the last will and testament of William Nason, dated October 31, 1810, by which the testator

devised to his wife, Mary Nason, during her natural life and so long as she should remain a widow, all his home farm, on which he then resided, with all the buildings thereon standing and the privileges thereto appertaining,—and also devised to certain of his children legacies of $200 each, to be paid out of his personal property, as soon as the same could be collected,—and which also contained this clause,—"I give and grant to my beloved son, John Nason, all my 'property, after the decease of my beloved wife, or marriage, he 'paying the legacies herein mentioned, also to my daughter Peggy 'Nason $200, to be paid as above mentioned, the horse I now own," (describing it,) "and to live and remain, so long as she is unmar-'ried, in my house, and have and enjoy the same privileges as she 'now does, and also one good cow." The plaintiffs also proved, that Mary Nason, the widow of the testator, died in the year 1829. The plaintiffs likewise read in evidence a deed from John Nason, the son of the testator, to one Ainsworth, executed in 1820; a mortgage deed from Ainsworth to one Miner, since deceased; a deed from the administrators of Miner to the plaintiff Clark; a deed from Clark to Phelps Smith; and a deed from Smith to the present plaintiffs;—all which deeds included the premises in question;—also the record of the foreclosure of the mortgage executed by Ainsworth. The defendant's possession of the premises demanded was proved, and was conceded by her, as hereinafter stated.

On the part of the defendant it was proved, that she had always remained unmarried; that from the year 1796 until the death of her father, the said William Nason, in 1810, she lived in her father's family, and in the same house in which she still lives, which was the family dwelling house of William Nason until his death, as also of his widow, during her life, and of the said John Nason for many years afterwards; that during all this period the defendant had lived in said house, eating at the table of her father, mother and brother, and contributing by her industry to the support of their successive families, as well as to her own support; and that for most or all of this time she had occupied a room in the south part of the house, with her bed therein, which was called her room, and was treated by the other occupants of the house as being under her especial control; but that, at the same time, she had been accustomed to be in other parts of the house, and to pass and repass throughout the

same and the yards and curtilage thereof, as she pleased, and as her employments required. It appeared, that, while the title, derived from John Nason, as above mentioned, was held by Phelps Smith, Smith, as well as John Nason, lived in the house, the defendant being there, as previously, taking her food at the table of said John, or of Smith, as was convenient, and contributing her own time and labor, as before. It also appeared, that, for a considerable period, and more especially for the last few years, the defendant had claimed a right, under the will of her father, to continue in the house, as she had formerly done; and that, in pursuance of this claim, she had remained in the house after John Nason left it, in the spring of 1847, and until the time of trial. During this last period other persons also lived in the house, as tenants of the plaintiffs.

Upon these facts the county court rendered judgment for the defendant. Exceptions by plaintiffs.

*J. Maeck* for plaintiffs.

1. If the court should be of opinion, that the testator intended to make any devise to the defendant, we contend, that it is void for uncertainty. It has always been required, that the words should be sufficient reasonably to ascertain the estate devised. 2 Hil. Ab. 528. 6 Cruise 120, § 25. *Baker* v. *Newton*, 2 Beavan 112, [3 Har. Dig. 6862.] *Henry* v. *Hancock*, 4 Dow 145, [3 Har. Dig. 6861.] *Richardson* v. *Watson*, 4 B. & Ad. 787. Jarm. on Wills 318. The rule with regard to the description of a devisee is, that it is sufficient, if the words are such, that, with the aid of other circumstances, the devisee may be distinguished from all other persons. But where doubts exist, and the devise is claimed by more than one person, neither can take. 2 Hil. Ab. 525. 6 Cruise 120, § 25. *River's Case*, 1 Atk. 410. Parol evidence is only admissible, when it removes all doubt, and distinguishes the devisee by the other circumstances appearing on the face of the will. But here the parol evidence is necessary, not only to ascertain the particular house the testator meant, but the extent of the devisee's right in it; and we insist, that, to this extent, parol evidence is inadmissible, although it may be proper, for the purpose of showing the quantity of interest of the testator in the thing devised. 1 Jarm. on Wills 349.

2. The devise, being void for uncertainty at the decease of the

testator, cannot be set up by subsequent enjoyment. Such testimony can only be admissible, if at all, to show the extent of the right, after it is ascertained, that the right existed.

3. There is no devise to Peggy Nason by the will. There are no devising words, as respects her. We contend, that the remainder was devised to John Nason, he paying debts and legacies, and also delivering to Peggy the horse and cow; and that what is said as to her living in the house is mere advice to John; and if so, Peggy takes no interest in the real estate. 2 Hil. Ab. 522. 6 Cruise 199. The general intent of the testator must be carried into effect, to the exclusion of any particular intent. 2 Hil. Ab. 518. 6 Cruise, Tit. Devise. 1 Jarm. on Wills 411, 420. The general intent of the testator in this will was, to give to John Nason, after the death or marriage of the testator's widow, all the testator's property, subject to the payment of the debts and legacies.

*C. Beckwith* for defendant.

The parol evidence, in relation to the situation of the persons interested under the will, the situation of the property devised, the circumstances of the testator and his family and affairs, was admissible, for the purpose of determining the quantity of interest intended to be given by the will. *Lowe* v. *Lord Huntington*, 4 Russ. 532. Wigr. on Wills 57, 67. 1 Phil. Ev. 546. The will, aided by the extrinsic evidence, is sufficiently certain to give to the defendant a right to remain in the house, occupying the portion sued for by the plaintiffs; and if, to this extent, the will is sufficiently certain, it cannot be held void for uncertainty, because the rights of the defendant may be in other respects uncertain. The parol evidence of the practical construction given to the will by the devisees and their grantees was admissible, for the purpose of determining and defining the rights of the defendant under the will. By this practical construction the will has been rendered certain, to the extent claimed by the defendant, and such construction is binding upon the plaintiffs. *Jackson ex d. Schenck* v. *Wood*, 13 Johns. 346. *Owen* v. *Bartholomew*, 9 Pick. 520. *Makepeace* v. *Bancroft*, 12 Mass. 469. *Choate* v. *Burnham*, 7 Pick. 274, 1 Phil. Ev. 540. 1 Greenl. Ev. 337.

The opinion of the court was delivered by

HALL, J.   Several objections are made to the judgment of the county court.

1.   It is said, that there are no devising words in the will to Peggy Nason, in regard to her living in the house; that the language of the testator is to be construed as matter of advice to John Nason to permit her to live there; and that she consequently took no absolute interest or right in the house by the will.

This objection, we think, ought not to prevail.   We should be inclined to construe the will as a direct devise to her of a right to all the privileges in the house, that she had before enjoyed.   But whether the previous words " *give and grant*" are to be connected with the devise to her, or her right is to be raised by implication, is quite immaterial.   To whichever class of devises the gift to her is referred, we think the intent of the testator, that she should have a right in the house, is quite plain.   The legacy to her of a particular horse, owned by the testator, immediately precedes, and that of a cow immediately follows, this devise, in the same sentence; and if the devise is a mere recommendation, the legacies must also be the same.   To hold, that she acquired no right to these articles by the will, would be such a violation of the manifest intent of the testator, as to appear quite absurd.   We have no doubt, from the language of the will, that the testator designed to make an absolute devise to her,—that it was his intention, that what was before a privilege, subject to his will as her father, should be the measure of a right, which she should enjoy after his decease.

2.   It is objected, that parol evidence is inadmissible, to show the extent of the privilege, which the devisee had enjoyed in the house of her father previous to his death, for the purpose of giving effect to the devise.

It is undoubtedly true, that parol evidence is inadmissible to prove the *intention* of the testator, as an independent fact; for that would be making a will for him, without writing; but it has always been held, that the circumstances surrounding a testator at the time of the execution of his will may be given in evidence, to identify the property, upon which the will was designed to operate, and to give effect to the words of it.   It was conceded in the argument, that extrinsic evidence, to show *the quantity of interest of the testator*

in an estate intended to be devised, might be admissible ; but it is urged, that the quantity of interest intended to be devised, when it is to be carved out of a greater interest in the testator, is of a different character ; and that evidence of such interest is not admissible.

This distinction is almost too nice, to be intelligibly stated ; and we are unable to discover any ground for it, either in reason, or from authority. If the testator's devisable interest in the house, in this case, had been only such as he had previously enjoyed, and he had devised it to his daughter, describing it as such, the objection concedes, that the quantity of his interest might have been shown by parol. It is difficult to conceive, why the extent of a like interest, stated to be in another, could not be shown and measured in the same manner. One of the seven general propositions, upon the correctness of which the clear and able work of Wigram on Wills is based, declares, that, for the purpose of identifying the thing intended by the testator, and of determining the *quantity of interest,* which is given by his will, parol evidence is admissible as to every material fact relating to the property, which is claimed as the subject of disposition ; and the authorities cited by him appear fully to sustain the proposition. No such distinction, as that contended for, is made, or intimated, by this writer, or any other that has been cited.

3. It is next insisted, that, even with the aid of parol testimony, the devise to the defendant is to be treated as void for uncertainty.

It is true, that the language of a testator, in attempting to make a devise, may be so confused, or ambiguous, as to render it impracticable, even by a knowledge of the surrounding circumstances, to determine what he intended ; and in such case the devise must, from necessity, be held void for uncertainty. A common case, mentioned in the books, of a gift void for uncertainty in the designation of the *quantity* intended to be given is that of a bequest by the testator of "*some of his best linen.*" It being impossible to determine, how much of his linen the testator intended, the bequest must fall for uncertainty. But if, instead of *some* of his best linen, the testator had said, he gave to A. the same quantity of his best linen, that he had before delivered over to B., a rule for determining the quantity bequeathed would have been furnished. The intention of the testator, in such case, would have been perfectly clear ; and although

there might be great embarrassment and difficulty in determining the quantity of linen, which had been delivered to B.,—so great, perhaps, that no two juries would find exactly the same quantity,— yet this difficulty would not render the will void for uncertainty. The measure provided by the testator was certain. The uncertainty would arise for the want of sufficient proof in applying it. The legatee would be entitled only to so much linen, as he could prove had been delivered over to B. If he failed to prove any had been delivered, the bequest would fail for the want of any subject for it to operate upon, not for any uncertainty in the expressed intention of the testator.

In this case the testator has provided a certain measure of the right of Peggy Nason, the devisee. His intention is clear and un-ambiguous, that she should have the same right in the house, that she had before enjoyed; and if there is any difficulty in regard to the devise, it is in ascertaining, by proof, the extent of her previous enjoyment. If she had failed in proving any definite occupation, or enjoyment, the devise must have fallen for want of any thing for it to operate upon. There would have been no such property found, as that devised. But the previous privilege, which the will had changed into a right, has, by applying the measure specified in the will, been ascertained; and, being ascertained, the defendant is entitled to the benefit of it.

The case most strongly relied upon by the plaintiffs, to show that the devise in this case should be held void for uncertainty, is that of *Jones* v. *Hancock*, cited from 1 Jarm. on Wills 318. In that case the testator devised certain land to his daughter, and then provided, that, if she should marry a man with less property than he had devised to her, she should have no more of it, than should be equal to that of the man she married; and that, in such case, all the remainder should immediately pass over to another daughter. The devise over to the second daughter was held void,—not, however, by reason of the uncertainty in the measure, which the testator had provided for determining the quantity, that should pass to the second daughter. It was conceded, that the second daughter could not take a portion of the land in severalty, for the want of any designa-tion of the portion so to be taken, and it was held, that she could not take as tenant in common, because the estate was to vest in her

16

immediately on the marriage of the first daughter, before the proportion, to which she would be entitled, could be ascertained. The point decided in the case was, that the extent of the interest of a tenant in common in land must be capable of being ascertained from the instrument creating it. The decision was, not that the measure for ascertaining the quantity of the tenant's interest was too uncertain to be applied, but that no measure, extrinsic from the instrument creating it, could be admitted to give effect to such an estate. The question, therefore, upon which that case turned, was foreign to that which arises in this.

4. It is farther objected, that the testimony in regard to the occupancy and use, by the defendant, of the room and house, subsequent to the death of her father, was inadmissible. We are inclined to think the evidence was admissible, as showing a practical construction of the extent of the right under the devise, by those claiming adverse to her, and under whom the plaintiffs claim ;—but it is unnecessary to say it was admissible on that ground. The right of the defendant to occupy the room in controversy was a personal right, which she could not assign, but which she might waive. The testimony was proper, to connect her possession at the time of the action brought with that at the death of her father, and to show, that she had continued in the exercise of her right, and had not waived or abandoned it.

It is unnecessary to give a name to the interest, or right, which the defendant had in the house. Any interest, or right, whatever, may be given by will. The right, which she acquired, was doubtless a personal one, and is, perhaps, in the nature of an easement. But by whatever name it may be called, it must be considered as extending to the exclusive possession of the room, which she occupied as a sleeping room. To give the devise any other effect would be to suppose, that the testator intended to render it entirely valueless to his daughter. We think she had the right, under the will, to occupy the room, free from all intruders, and that the plaintiffs, by virtue of their paramount estate, are not entitled to enter it against her consent, either by writ of possession or otherwise.

The judgment of the county court is therefore affirmed.