Alex'r R. Beall, plaintiff in error, vs. Stephen Drane, et al., ex'ors, &c., defendants in error.

Stephen Drane, et al., ex'ors, &c., plaintiffs in error, vs. Alex'r R. Beall, defendant in error.

[1.] A free person of color is capable, by the laws of Georgia, of acquiring and holding real estate, except in the cities of Savannah, Augusta and Darien.

[2] A bequest in these words: "I reserve the tract of land, &c., for the use of J. A. W., during his natural life, or so much thereof as he can cultivate for his support, and at his death the same to revert back to my estate; but said land shall not be liable for the debts or contracts of the said J. A. W.," is not void for uncertainty.

[3.] The 25th item of the will of Thomas E. Beall was in these words: "It is my will and desire that after my estate shall have been settled up, and all bequests paid out agreeable to the provisions of this my will, the balance of the money or cash remaining in the hands of my executors, shall be invested in an education fund, for the purpose of educating *poor orphan children*, citizens of the county of Columbia, and if the fund should not be absorbed, then the overplus to be applied to the education of the *poor children* of the county of Columbia."

*Held*, That the bequest was void, on account of the uncertainty as to the persons who were to take under it.

The *poor children* of a county, or congregation, or school, are not susceptible of ascertainment.

Demurrer, from Columbia county. Decided by Judge HOLT, March Term, 1857.

Ordered, by consent of counsel, that the above cases be consolidated and argued together.

This case came up before the Court at the January Term, 1857, the proceedings on which argument, the facts of the case, and the will of the testator, will be found fully reported in 21 *Georgia Reports*, 21.

The case came up under the following circumstances :

Alexander R. Beall, as next of kin to Thomas E. Beall, having obtained letters of administration upon the estate of the said Thomas E. Beall, filed his bill, and after stating the proceedings before referred to, as reported in 21 *Georgia Rep.* 21, set forth the following allegations and statements:

That the ninth clause of said will is illegal and void, and cannot be carried into effect, because it conveys a tract of land to a free person of color, who has not capacity to take and hold lands in our State, and because of uncertainty in the terms of said clause; that the tenth clause is void because of such uncertainty in its terms, and that the twenty-fifth clause is void, because of uncertainty as to the subject of the bequest; and after probate is refused to the clauses of the will which have been declared void, the impossibility of

arriving at or ascertaining the amount conveyed by said clause; a portion of the fund constituted by the sale of testator's property as directed by the will, out of which certain payments were directed to be made by the clauses which have been declared invalid, and out of which fund the residuary bequest in the said twenty-fifth clause contained, is directed to be taken, now resulting to your orator by reason of the invalidity of said clauses; and that portion being unascertained and unascertainable; and also, because of uncertainty as to the objects of the bequest; the same being to "poor orphans, citizens of Columbia county," and to "poor children of Columbia county," cannot be carried into effect as a portion of the last will and testament of Thomas E. Beall. And the twenty-sixth clause of said will is void because dependent upon the said twenty-fifth clause, and because of indefiniteness and obscurity in the directions given by said testator as to the method in which his intention in this connection was to be or could be carried into effect.

That as next of kin, he has obtained letters of administration upon the estate of the said Thomas E., not disposed of by last will and testament, a copy of which said letters are hereto annexed, and marked Exhibit E; and that as such administrator de bonis non, he is entitled to all of the estate of the said Thomas E., which he sought to convey by the clauses of said will that have been declared void, and to which probate has been refused, as well as to the property sought to be conveyed by the said ninth, tenth, twenty-fifth and twenty-sixth clauses of said will, as the same cannot be carried into effect, a part of which property only has been given up by said executors to your orator, to-wit: that disposed of by the twelfth, thirteenth and fifteenth clauses of said will; that as such administrator de bonis non, he is entitled to be paid a reasonable hire by said executors for the work and labor of said slaves from the death of the testator to the period when the same were by said executors given up to your orator, to-wit: on the          day of          in the

year of our LORD eighteen hundred and fifty seven, which said hire amounts to the sum of five thousand dollars, or other large sum; that as such administrator he is also entitled to the stock, farming utensils and other articles, together with the crop of every description, which was on hand at the testator's death, and reserved for the purpose of "stocking" the plantation for the slaves, amounting in value to the sum of two thousand dollars, or other large sum, (the same being disposed of by one of the clauses of said will which has been declared void as aforesaid,) that he is entitled to have and receive from the executors the crop made on the plantation of the testator during the past summer and fall, to-wit; the summer and fall of the year eighteen hundred and fifty six, the same amounting to the sum of five thousand dollars, or other large sum; that he is also entitled to have and receive from said executors that which would be equivalent to the use, enjoyment and cultivation of said plantation, or the actual cultivation thereof by said slaves, for four years, the said use and cultivation of the same for the period aforesaid, having been, by one of the clauses which has been declared void as aforesaid, given to the said slaves, in all amounting to the other and further sum of five thousand dollars; that he is entitled to have and receive from the said executors the sum or sums of money which would have been necessary to remove and used as expenses in removing the said slaves to Liberia, or some free State or Territory, and which were directed to be taken out of his estate and used for this purpose by the testator in certain clauses of his will, which have been declared to be void, as aforesaid, the same amounting in all to the sum of three thousand dollars, or other large sum.

That by the said tenth clause of the said will, a reservation of a tract of land for the use of one James A. Watson for life, was sought to be made by the same testator, that the said James A. is interested, therefore, in the decree which may be made by this honorable Court in deciding upon the valid-

ity of said clause, wherefore your orator prays, that he may be made a party defendant to this his bill of complaint, if it be deemed necessary. Your orator also showeth, that by the twenty-sixth clause of said will the testator directs that the Justices of the Inferior Court of said county of Columbia, shall select some person under certain conditions therein specified, to disburse the fund therein directed to be applied to the purposes specified, or that the said Justices, if they can find no one to take charge of the disbursement of the same under the conditions prescribed, shall themselves take charge of the said fund; and if by virtue of said provision the said Justices are interested in the decree which is by this his bill of complaint invoked by your orator, he prays that the said Justices may be made parties defendant to this his bill of complaint.

To this bill the defendants by their solicitor, Charles J. Jenkins, demurred on the grounds,

1st. That there is no equity in said bill, for that the clauses in the last will and testament of Thomas E. Beall sought to be invalidated, are legal, and sufficiently distinct and certain, as well in reference to the subjects as the objects of testamentary disposition, to admit of execution.

2d. That there is no equity in so much and such part of said bill as seeks to invalidate and set aside the 9th clause of said will, making provision for Nancy Goings, a free person of color; for that said clause is legal, valid and capable of execution.

3d. That there is no equity in so much and such part of said bill as seeks to invalidate and set aside the 10th clause of said will, making provision for James A. Watson; for that said 10th clause is legal, valid and capable of execution.

4th. That there is no equity in so much and such parts of said bill as seek to invalidate the 25th and 26th clauses of said last will and testament; for that both the subject matter

of the devise and the objects of testator's bounty contemplated in said clauses, are clearly ascertainable, and the entire charity legal, wise and beneficent.

5th. That there is no equity in so much or such part of said bill wherein is sought a recovery of hire for the slaves belonging to the estate of the said Thomas E. Beall, during the year 1856, or of the actual proceeds of their labor during that year; for that said proceeds fall into and constitute part of the residuum, and pass under the said 25th and 26th clauses of said will.

6th. That for the same, as well as for other good and sufficient reasons, there is no equity in so much or such parts of said bill wherein is sought a recovery of rent for the plantation whereon said Thomas E. resided, or an equivalent for the use, enjoyment and cultivation thereof since testator's death.

7th. That there is no equity in so much and such part of said bill wherein is sought a recovery of the stock, farming utensils, and other articles on said plantation, being at testator's death, and of the crops thereon had; for that said personalty, by the 23d and 24th clauses of said will is directed to be sold, and the proceeds of the sale thereof is disposed of by the 25th and 26th clauses thereof.

8th. That there is no equity in so much and such part of said bill wherein is sought a recovery of the sum or sums of money which would have been necessary to remove, or used as expenses in removing said slaves from the State of Georgia; for that said expenses are directed to be taken out of a fund, (no sum being designated,) the balance of which sum is disposed of by the 25th and 26th clauses of said will.

9th. That the guardian of Nancy Goings and James A. Watson, and the Justices of the Inferior Court of Columbia county, none of whom have been served, and one of whom has not been named in said bill, are necessary parties, without whom said cause cannot proceed.

The said demurrer came on to be heard before his Honor

the said Judge, at chambers, when the counsel for the complainant requested the decision of the Court upon the points. and to the effect following, that is to say:

. 1st. That Nancy Goings, being a free person of color, is incapable of taking the devise conveyed for her benefit in the 9th clause of Thomas E. Beall's will; the said devise is therefore void.

2d. The devise of the 10th clause of said will to J. Watson is void, because of indefiniteness and uncertainty in its terms.

3d. The complainant, as heir at law of Thomas E. Beall, is entitled to have and receive the *estate for life* in said lands thus undisposed of, if the said devises, or either of them is void—the same passing to him, and not to the residuary legatees.

4th. He is also entitled to have and enjoy the *term for years* in the land or plantation conveyed for the use of the slaves of testator, by the 17th clause of the testator's will, the said clause having been declared void and invalid, and this estate being thus left undisposed of by the will.

5th. As heir at law, he is entitled, too, to the *accumulations* which have been made upon said plantation since testator's death.

6th. As such heir he is also entitled to have and receive all such portions of the proceeds of the sale of testator's real estate, directed by said will to be employed in removing the said slaves to a free State, or in the arrangements necessary thereto, if the 15th, 16th, 17th, 18th, 19th, 20th and 24th clauses of said will had not been declared null and void.

7th. That the reason for the rule which at common law passed all personal property not disposed of by the failure, lapse, or illegality of any of the clauses of a will, to the residuary legatee, does not in effect exist in Georgia, and therefore the rule does not exist. Consequently there is no more reason in our State, why [if the *heir at law* can only be excluded by express words and plain meaning from taking real estate so undisposed of] the next of kin should be excluded

from undisposed of personal property, except by express words, than should the heir at law from real estate.

8th. That if this rule be not repealed, still it is only the *general* rule; that to it there are exceptions, and that a residuary bequest of a particular fund, or of the balance of cash remaining, after the estate has been settled up and all debts paid, [unless there be something in the will expressly to the contrary,] forms such an exception; and that this case forms such an exception.

9th. That though the propositions in the last two requests directed to the Court be not true, still that inasmuch as the aforesaid clauses have been declared void, and by judgment of law the slaves by them sought to be manumitted have passed to the complainant as next of kin the personal property which was *incident to* or *dependent upon* such manumission, must also pass to the next of kin.

10th. That he is, consequently, entitled to such stock, utensils, &c., as was directed to be used on the plantation for the negroes emancipated; also, to such amount of the crop, corn, fodder, bacon, and other such articles as were directed to be placed upon said plantation for said slaves.

11th. That he is entitled to such amount of money as would have been employed in the removal of said slaves, by virtue of the provisions of said will, so declared void; such amoun being now undisposed of by the will.

12th. That as heir at law and next of kin, he is entitled to have and receive all the property, real and personal, not disposed of by reason of the failure of said clauses.

13th. That he is entitled to receive a reasonable *hire* for the said slaves, from the death of the testator to the time when they were delivered up to complainant.

14th. That as next of kin, he is entitled to the amount of cash remaining, bequeathed by the 25th clause:

1. Because, with the fund out of which this residuary bequest is to be taken, is blended the amount of expenses directed to be incurred in the manumission or removal of said

slaves; and this amount belonging by effect of law to the next of kin, and being now not to be ascertained, "the balance of cash" bequeathed cannot be determined; and therefore this clause cannot be executed for uncertainty.

2. This clause is void for uncertainty because it is a bequest to "poor orphans, citizens of Columbia county," or failing these, to "poor children of said county."

After argument heard, his Honor, the Judge sustained the second and third grounds in said demurrer contained, and refused to decide as asked in the first and second requests above specified. And the counsel for complainant tendered his bill of exceptions, saying,

1st. That the Court erred in deciding that Nancy Goings was not incapable of taking the land devised to her by the 9th clause of said will, and that the disposition made in said clause might be legally carried into effect.

2d. That the Court erred in deciding that the devise in the said 10th clause was not void for indefinitenes and uncertainty.

The counsel for the defendant tendered his bill of exceptions, saying,

1st. That the Court erred in holding that the 25th and 26th clauses of said will were invalid, that the subject matter of the devise and the objects of the testator's bounty were not clearly ascertainable, and that the charity was not legal, wise and beneficent.

2d. In holding that the complainant was entitled to recover hire for the slaves, referred to in the 5th ground of demurrer, or the proceeds of their labor, for the year 1856, and that the said proceeds did not fall into and constitute a part of the residuum, and pass under the said 25th and 26th clauses.

3d. In holding that complainant is entitled to recover rent for the plantation whereon Thomas E. Beall resided, or an equivalent for the use, enjoyment and cultivation thereof since the death of testator, and the possession and enjoy-

ment of the same until the expiration of the four years for which it was to be enjoyed by the slaves.

4th. In holding that he is entitled to recover the stock, farming utensils and other articles on said plantation at testator's death, and the crops thereon, and that the same was not disposed of legally by the said 25th and 26th clauses of said will.

5th. In deciding that he is entitled to recover such sum or sums of money as would have been necessary to remove, or would have been employed in removing the slaves aforesaid from the State of Georgia; and that said expenses were not taken out of a fund, (no sum being designated,) the balance of which is disposed of by the said 25th and 26th clauses.

STARNES, for plaintiff in error in the first case, and for defendant in error in the other.

JENKINS, contra.

By the Court.—LUMPKIN, J. delivering the opinion.

There are cross bills of exceptions filed in these cases. By the 9th clause of Thomas E. Beall's will, the testator says: "I reserve the tract of land situate, lying and being, in the county of Columbia, on the waters of Sweet Water Creek, adjoining lands belonging to the trustees of the Methodist Episcopal Camp Ground, it being the tract of land that I purchased from Morgan, and formerly owned by Mathew W. Standford, containing one hundred acres more or less, for the use and support of Nancy Goings, a free person of color, it being the place whereon she now resides, during her natural life, and after her death, the same to revert back to my estate; and that said tract of land shall not be liable for the debts or contracts of said Nancy Goings."

" Item 10th, I reserve the tract of land, situate, lying and being in Columbia county, on the north side of the Wrightsboro road, on the waters of Big Kiokee Creek, containing one

hundred and eighty acres, be the same more or less, adjoining lands of Benjamin Upton, Lamar and others, it being the tract of land that I purchased of Valentine Watson, for the use of James A. Watson during his natural life, or *so much thereof* as he can cultivate for a support, it being the place whereon said Watson now resides, and at his death, the same to re-vert back to my estate; but said land shall not be liable for the debts or contracts of said James A. Watson."

The Court upon demurrer to the bill filed in this case was asked to decide, that the devise in the 9th item of the will was void, because Nancy Goings, being a free person of color, was incapable of taking under this devise. And that the 10th clause was void, because of the indefiniteness and uncertainty of its terms. On the contrary, the Court held that these bequests were valid; and this constitutes the al-leged error in this bill of exceptions.

Was the Court right?

It might be plausibly contended that the *title* to the tract of land, did not pass to Nancy Goings, under the 9th clause of the will, there being no words of gift, grant or alienation. The operative words are, "I reserve for the use of Nancy Goings" &c. Reserve the tract of land from what? From sale by his executors as afterwards directed in regard to his lands generally in the 23d item of his will; Nancy Goings was to have the use and occupation; but the title to remain in the executors, and the provision, that the life interest thus given should not be subject to her debts, harmonizes with this idea.

But suppose it be a life interest bequeathed to this free person of color, is she not competent to take and hold it, un-der the laws of this State? I once thought otherwise, but subsequent examination has shaken my confidence in the correctness of that opinion.

By the 8th section of the Act of 1818 (*Cobb* 993) free per-sons of color were not permitted to purchase or acquire any real or personal estate. But by the 3d section of the Act of

1819, (*Cobb* 995) this section of the Act of 1818 is repealed, so far as it respects real estate, except in the cities of Savannah, Augusta and Darien. What is the necessary implication? Why, that free persons of color in Georgia, except in the three cities designated, may acquire real estate. And this inference is confirmed by the Act of 22d January, 1852, (*Phamplet p.* 101,) regulating the sale of real estate " belonging to free persons of color."

While, therefore, I exceedingly doubt the policy of allowing free negroes to acquire and hold real estate, and that too without limitation as to quantity, still the correction of the evil, if it be one, is with the Legislature and not with the Courts.

We do not see any insuperable difficulty, as it regards the tenth item of the will. It was intended by the testator to give James A. Watson, we apprehend, a life estate in the whole tract of land, to be used and occupied by him, for the purpose of *cultivation ;* and for nothing else. He could not lease or otherwise dispose of it.

Can the 25th and 26th items of the testator's will be executed ? The circuit Judge held, that these clauses were invalid; because the subject matter and objects of the testator's bounty were not clearly ascertainable : And further, that the charity therein created was not legal, wise and beneficent.

This decision is assigned as error by the other side, and constitutes the second bill of exceptions.

After much reflection on this case, and with a sincere wish to fulfil the intentions of the testator, which are highly commendable, we fear it will be difficult if not impossible to execute this will.

Who are the poor orphan children of Columbia county designated as the beneficiaries, of the testator's bounty ? And how are they to be ascertained ? The poor children of a county or congregation or school are not susceptible of ascertainment; and when such terms are used in wills, as *designatio personæ,* they have always been determined to be insufficient.

and the devise or bequest intended to be created by them, to be void for uncertainty. (*Powell on devises,* 419 ; *Com. Dig.* 412 ; *Bac. Ab.* 159 ; *Dashiell and others against the Attorney General and others* 5, *Harr. and John.* 392, *and the authorities there cited.*)

And this difficulty cannot be remedied by the doctrine of *Cy. Pres.* in our State; nor by the statute of Elizabeth; nor by the inherent powers of a Court of Chancery, 14 *Ves.* 342 ; 2 *Iredell* 255 ; 4, *Dana* 357 ; *Adam's Eq. title Master.* And an Act of the Legislature to cure the defect would be void as against the heir at law, in whom the title to the property vests.

There are other serious, if not insurmountable obstacles in this case, what amount of education is to be bestowed upon these poor orphan children? If no more than the law now supplies, the fund is not needed. In case the fund will not furnish adequate means for giving the mere rudiments of an education to all of this class, how is it to be apportioned? What was the wish of the testator upon these and numerous other points, which naturally suggest themselves? We are left to conjecture. A Court of Chancery, or even the Legislature undertaking to frame a scheme, might be wide of the mark contemplated by Mr. Beall, and this is the danger, in all these cases.

The cases show that a devise is void, which gives a latitude of discretion to the trustees. Who then shall supply a plan for the application of this fund? Many might be able and willing to do so. But would that be the will of the testator? And it is that, and that alone, that we are called upon to carry out. What two minds would agree, touching the dispensation of this charity? For myself I am constrained to say, that so far as my knowledge extends, the *poor school* system has proved a failure in this State. Common schools may succeed, experience will show. Any system, which stops short of feeding and clothing the destitute children obtaining an educa-

Beall vs. Drane, et al., ex'ors.

tion, will accomplish nothing. The Girard charity is based upon this truth; and herein consists its wisdom.

While therefore I am delighted to see the manifestation made by Mr. Beall in the right direction, and for which his memory deserves to be consecrated in the hearts of the benevolent, I regret that his humane purpose, should miscarry, for want of being more specific. I sincerely trust that our men of wealth, who are encumbered with large estates, with no immediate objects of their bounty upon whom to cast their wealth, will, while imitating his noble and praiseworthy examble as *to its ends* and aims, take more precaution as to the mode and manner of effectuating their designs. While the North is studded all over with institutions to alleviate the sufferings and promote the welfare of our race, endowed by munificence of private persons, our people heap up riches and die and know not who shall gather them, whether a wise man or a fool.

Judgment affirmed.

BENNING, J. concurring.

The Court are unanimous on all the questions in these two cases, except those growing out of the 25th and 26th items of the will. Therefore, I shall confine myself to those two items.

The Court below held those two items, void. I think, that it ought to have held them, void. I think, that they are void for *uncertainty.*

What persons were meant by the expression, " poor orphan children, citizens of the county of Columbia ?" Persons in existence at the time of the testator's death, or such persons, and their successors through all time ? How poor must persons be, to meet this description, wholly destitute of property, or how nearly so ?

The same questions may be asked, of the expression, "poor children of the county of Columbia."

There is to be raised, " an education fund for the purpose of educating poor orphan children." &c.

What is meant by " *educating?*" 1st, as to the branches to be taught; 2d, as to the extent to which, the branches are to be pursued; 3d, as to the time during which, each child is to enjoy the benefit; 4th, as to the school to which each child is to be sent, whether a school got up for the special purpose, out of the fund, or some, and what, school of the county? 5th, as to the great question of maintenance during the period while the " educating" is going on? The poor have to be fed, and clothed, and lodged, or they cannot be educated.

It seems to me, that there is no certainty as to what the testator had in his mind, in these respects. There is nothing by which, we can *at all* determine what his *scheme* was.

When this is so, ought the testamentary disposition to be held good? Executing such a disposition must be all blind guess work, so far as the intention of the testator is concerned.

No case sanctioning a disposition so uncertain as this was cited. The Girard will case comes the nearest to doing so, but in that case, the disposition uncertain as it was, was certainty itself, as compared with the disposition in this case. See *sections, 3, 4, 5, 6, 7, 9, of the* XXI *item of Girard's will.* 2 *How.* 131.

I think, then, that these two items in the will, are void for being uncertain in the respects above indicated.

The items, are, I think, obnoxious to other objections, but I content myself with mentioning this one.

McDonald, J. dissenting.