MARY A. WOOLFOLK ET AL. v. R. J. RICKETS AND WIFE.

1. HOMESTEAD.—Voluntary abandonment of a homestead, with a fixed intention not to return, though a new homestead may not be acquired, will open such abandoned property to creditors and to sale by the husband as other community property not homestead.

2. VENDOR'S LIEN—HOMESTEAD.—The holder of a vendor's lien upon a homestead can enforce his lien; and it is only as to the holder of such lien the rule obtains that homestead rights do not attach to land until it is paid for.

APPEAL from Cherokee. Tried below before the Hon. M. Priest.

Rickets and wife instituted suit in trespass to try title for the one-half interest in a tract of land adjacent to the town of Rusk, claimed as their homestead.

The defendant, Woolfolk, pleaded not guilty; that she was a *bona fide* purchaser for value, &c., and set out her claim of title back to a deed from the plaintiff to Armstrong & Gibson, from them to F. M. Hicks, and from Hicks and wife to defendant. The defendant prayed that Hicks and wife be vouched as parties to the suit under their warranty deed, which was accordingly done. Hicks and wife, when made parties, adopted the pleadings of the original defendant.

The evidence showed a deed in November, 1858, to plaintiff, R. J. Rickets, for the land in controversy. Reagan, witness, testified that the plaintiffs resided thereon as a homestead until sometime in 1861, when they removed from the premises to the place in the town of Rusk, called the "Neely place;" that plaintiff lived at the Neely place during the late war and for some years afterwards, "surrounded with the comforts and insignia of home;" that plaintiff was insolvent.

Witness Long testified that, from the fall of 1860 or spring of 1861, until about the close of the year 1868, plaintiffs resided on the Neely place; that they put some improvements on the Neely place; put a gallery in front of the house, built a crib, cultivated a garden, had their furniture and home comforts there, and used the place as men ordinarily do their homes.

That the Neely place was sold in 1868 at sheriff's sale, under an order of the District Court; that at the sale plaintiff objected to it on the ground that the Neely place was his homestead, and not subject to forced sale, and that whoever bought it would buy a lawsuit. The land was sold under vendor's lien held by S. P. Douley.

The houses on the place in controversy were moved during the war, and that the land was inclosed and in cultivation under one fence, with other lands owned by defendant Woolfolk, and had been for years.

Bonner testified that plaintiffs lived at the Neely place from 1860 until about January 1, 1869; that it was sold in April, 1868, under order of court for the purchase money; * * that plaintiffs refused to give up the place after the sale was made by the sheriff, and claimed it then as his homestead, and as such not subject to sale under the judgment; * * that no one had lived on the land in controversy for several years; that there had been no houses on it since some time during the war; that it had been for several years inclosed in Mrs. Woolfolk's field; that the place where the house had stood had been in cultivation for several years; that at the time of the sale from Armstrong to Hicks, and from Hicks and wife to Mrs. Woolfolk, the plaintiffs, with their children, were residing at the Neely place surrounded with the usual comforts and insignia of home.

The defendants gave in evidence a deed from R. J. Ricksets to Armstrong & Gibson of date June 27, 1863, for the land in controversy; deed from Armstrong & Gibson to E. G. Armstrong, July 15, 1864; from E. G. Armstrong and wife to F. M. Hicks, March 1, 1867; from Hicks and wife to defendant, Mary A. Woolfolk, May 6, 1867.

Mrs. Woolfolk testified that she bought of Hicks and wife a tract of 42 acres, of which 14 acres was the land in controversy. When she bought she had no knowledge of any claim by plaintiffs to the land; that they were living at the time of her purchase at the Neely place; that she bought for the purpose of using the premises as a homestead, and would not have bought if she had had any idea of any claim to it by plaintiffs or either of them; that she bought in good faith and paid the purchase money, $1,000 gold, cash, and a note for $500, which she afterwards

paid, before any knowledge of plaintiffs' claim; when she bought there were no fences or other lines distinguishing or separating the 14 acres in controversy from her other purchase.

Dr. J. R. Frazier testified that he was agent for Mrs. Woolfolk in making the purchase from Hicks and wife; that Mrs. Woolfolk bought and paid for the land without notice of the claim of plaintiffs; that at the time of this purchase plaintiffs and family resided on the Neely place, and had resided there since about the beginning of the war; lived there until 1869, surrounded by the usual comforts and surroundings of their home.

J. R. Bonner was attorney for Douley, and had the "Neely place" sold; that at the sale plaintiffs publicly forbade the sale, notifying all persons present that it was his homestead, not subject to sale, &c.

The court instructed the jury that "if the husband and wife abandon the homestead and acquire another, the right to the first homestead is lost, but the right to the second homestead is not complete until the purchase money is fully paid, and the wife may assert her claim to the first homestead, unless it appears in proof that the same was by her voluntarily abandoned or another homestead was acquired and fully paid for; and this claim may be asserted even against a subsequent purchaser for value without knowledge of such claim."

The verdict and judgment for plaintiffs. Motion for new trial overruled, and defendants appealed.

*Bonner & Bonner*, for appellants.

*Long & Long*, with *E. W. Bush*, for appellees.

REEVES, ASSOCIATE JUSTICE.—This suit was brought by appellees to recover fourteen acres of land near the town of Rusk, claimed as their homestead. The petition was

filed in 1871.   In 1863 R. J. Rickets, without being joined
by his wife, sold and conveyed the land to Armstrong and
Gibson.   Appellants deraign title from Armstrong and
Gibson.

It cannot be doubted that this tract of land was the
homestead of appellees in 1858, and that they resided
upon it as their homestead until the latter part of the year
1860, or the beginning of 1861, when they left it and re-
moved to the Neely place, as it is called in the pleadings,
only a short distance from the land in controversy.   They
were occupying the Neely place at the time of Mrs. Wool-
folk's purchase, and continued to occupy that place until
1868 or 1869, when it was sold to pay the purchase money.

There has been no house on this place since 1865, and
the land has been in cultivation for several years as part
of appellants' farm.

The court charged the jury in effect that a homestead is
not lost by abandonment until another has been acquired.
In view of the facts in evidence we are of the opinion that
this was error.   As this court said in Gouhenant *v*. Cock-
rell, 20 Tex., 96: " True, a homestead may be disrobed
of its guarantees and the protection lost.   The best evi-
dence of this is that a new and permanent one has been
acquired."   It is further said in the same case, "admitting,
however, as we have held, that less evidence is sufficient,
and that where there is abandonment, with a fixed inten-
tion not to return, the property may be open to creditors,
yet it must be undeniably clear and beyond almost the
shadow, at least all reasonable ground of dispute, that
there has been a total abandonment, with an intention not
to return and claim the exemption," or, as expressed in
Shepherd *v*. Cassiday, 20 Tex., 24, " if he did intend on
leaving to abandon, this may be changed by him up to
the time that he acquires a new homestead, or up to the
time that some opposing right by sale has vested legally
in other parties."

The leading proposition of the charge is that a new homestead must be acquired before the old one can be lost by abandonment, when, as has been shown, voluntary abandonment, with a fixed intention not to return, though a new homestead may not be acquired, will open the property to creditors, and we think, under like circumstances, the property would be open to purchasers also.

For error in the charge of the court the judgment is reversed and cause remanded.

REVERSED AND REMANDED.