JOHNSON et al. v. GOLDSTEIN et al.†
(No. 5411.)

(Court of Civil Appeals of Texas. Austin.
Dec. 23, 1914. On Motion for Re-
hearing, Feb. 10, 1915.)

1. WILLS ⊜⟶590—DEVISE—USE AND OCCUPA-
TION—PERSONAL USE.

A devise of the use and occupation of land
passes an estate in the land to the devisee which
is not confined to his personal use and occupa-
tion unless the context clearly calls for such
limited construction.

[Ed. Note.—For other cases, see Wills, Cent.
Dig. §§ 1293-1297; Dec. Dig. ⊜⟶590.]

2. WILLS ⊜⟶614 — CONSTRUCTION — USE AND
OCCUPATION OF LAND.

Testatrix devised to her stepson her home-
stead to be used by him as a home during his
life, he to pay taxes and insurance, make need-
ful repairs, etc.; the remainder after his death
to the issue of his body, etc. She thereupon
devised the residue of her estate to her executor
in trust to pay a portion of the income to the
stepson for life, remainder to the heirs of his
body, and in default of heirs the property to
be used for a specific charity. *Held*, that the
will vested in the stepson an estate for life in
the homestead property, and not a mere right
of personal use, and hence on his abandonment
of his homestead right therein his estate was
subject to execution.

[Ed. Note.—For other cases, see Wills, Cent.
Dig. §§ 1393-1416; Dec. Dig. ⊜⟶614.]

3. HOMESTEAD ⊜⟶175—ABANDONMENT—EXE-
CUTION SALE.

On abandonment of a homestead, it be-
comes a subject of sale for the owner's debts.

[Ed. Note.—For other cases, see Homestead,
Cent. Dig. §§ 375-378; Dec. Dig. ⊜⟶175.]

4. HOMESTEAD ⊜⟶164—ABANDONMENT.

Where the owner of a life estate in a home-
stead in Texas left the state and became a cit-
izen of California and later brought suit in the
federal courts in Texas alleging his citizenship
in California to establish diverse citizenship,
there was an abandonment of his homestead ex-
emption in the property rendering it subject to
the execution.

[Ed. Note.—For other cases, see Homestead,
Cent. Dig. § 318; Dec. Dig. ⊜⟶164.]

On Motion for Rehearing.

5. EXECUTION ⊜⟶250—SALES—PRICE—INADE-
QUACY.

A judgment debtor who was no longer a
young man had a life estate in certain real
property which produced a revenue of $50 per
month. He was required to keep it insured and
in repair and pay the taxes, and, after living
on the property for a while, he abandoned it as
a home and removed from the state. *Held*, that
a sale of the defendant's estate therein on exe-
cution for $100 was not objectionable for inade-
quacy of price.

[Ed. Note.—For other cases, see Execution,
Cent. Dig. §§ 703-707, 789; Dec. Dig. ⊜⟶250.]

Appeal from District Court, McLennan
County; Tom L. McCullough, Judge.

Action by I. A. Goldstein and others against
William Johnson and others. Judgment for
plaintiffs, and defendants appeal. Affirmed.

Downs & Webb, of Waco, for appellants.
H. C. Lindsey, of Waco, for appellees.

Statement of the Case.

RICE, J. This suit was brought by appel-
lees against appellant Johnson to recover the
title and possession of a certain house and
premises, consisting of about 10 acres of land,
situated in the city of Waco, wherein judg-
ment was rendered in favor of appellees,
from which appellants have prosecuted this
appeal. It was tried as an agreed case under
the statute (article 1949, Vernon's Sayles' Civ.
Stat.), and involves: First, the construction
of item 9 of the will of Joanna McClelland,
deceased, whereby she devised said premises
to Peter McClelland; and, second, whether
he had abandoned his homestead rights there-
in at the time of the levy of the execution
and sale thereunder to appellees.

Mrs. Joanna McClelland, who died on the
27th of January, 1897, during her lifetime
was the owner in fee simple of the land and
premises sued for and described in appellees'
petition; and by her last will and testament,
which was duly probated in the county court
of McLennan county on the 5th day of May,
1897, she made the following disposition of
said property:

"Item 9. I further give and bequeath to my
said beloved stepson, Peter McClelland, my
homestead place to be used and enjoyed by him
as a home to live at for and during his natural
life, he to keep the taxes and insurance paid
thereon and make all needful repairs, and re-
mainder over upon his death to the issues of his
body born in lawful wedlock. In default of
such issue, then the same shall revert to my
general estate disposed of as hereinafter pro-
vided."

Item 10 of said will provides as follows:

"I hold divers and sundry notes against my
said stepson, Peter McClelland, which notes I
paid off as security to protect him, and which
judgments I paid off to further protect him,
which I desire my executor to cancel and sur-
render to him on my death, amounting to about
$25,000 at this time."

Item 11 provides that:

"All the residue of my estate I may die pos-
sessed of after satisfying the foregoing judg-
ments, I bequeath to Jno. K. Rose, my executor
hereinafter named, to be held by him in trust,
however, for and during the natural life of my
said stepson, Peter McClelland for the follow-
ing named uses and trusts, to wit: Out of the
revenue thereof my said executor shall pay tax-
es and keep the buildings belonging to said es-
tate insured, and shall pay the premiums there-
on, and shall pay all necessary costs and ex-
penses to preserve this estate, that in his judg-
ment may be necessary, and may employ attor-
neys for that purpose and pay the same, and
shall make all necessary repairs and improve-
ments to keep the property in good condition to
rent, and may retain ten per cent. on all monies
received and paid to him for his trouble in the
care of my estate; and further sum of ten per
cent. of all the revenues of said estate shall be
set aside as a contingent fund until such con-
tingent fund shall amount to the sum of $5,000,
and in such manner such contingent fund shall
be kept up, and then such contingent fund shall
be loaned yearly on good security and such
terms as my executor shall think best, which
contingent fund shall be held in reserve by
said executor to aid in rebuilding the property,
should any of said property be destroyed by

fire or otherwise, so as to keep up the revenues of my estate; and the residue of said revenues and income of my estate shall be paid over by my executor to my said stepson, Peter McClelland, monthly as the same may accrue, to be used and enjoyed by him as he may see fit as long as he may live; and upon his death my said executor shall turn over all that remains of my said estate then in his hands or under his control to the issue of the body of my said stepson, Peter McClelland, born to him in lawful wedlock, and in default of such issue all of my estate in the hands and under the control of my executor shall pass as provided in item 12, the next clause hereinafter in this will."

Item 12 provides that:

"Upon the failure of isssue of the body of said Peter as provided in item 11 herein, and upon his death as aforesaid, I bequeath to the city of Waco all the remainder of my estate so in the hands of my executor or under his control, to be used or sold and converted into money, at the discretion of said city, for the following purposes: To build, establish and maintain a ward or wards as a part of the city hospital of the city of Waco, connected therewith, or at a separate place in said city, to be called the 'Joanna McClelland Ward,' for the sole use of females entitled or to be used under the ordinances of the city of Waco to entry and care therein, requiring only of the city of Waco and its proper discretion in the use and application of this bequest in a spirit of charity."

By item 13, John K. Rose, one of the parties to this suit, was appointed executor without bond, for the purpose of carrying out the provisions of said will. The property sued for herein, with improvements, was shown to have been of the value of $20,000, the improvements consisting of a two-story brick building, servant houses, outhouses, stables, barns, fences, etc., and were of the value of $10,000; and such property was of said values, respectively, when Mrs. McClelland died, and when the said Peter moved thereon, the rental value of which was $50 per month.

Peter McClelland, who has a wife and two stepdaughters, but no children of his own, moved with his said family into said property about the 5th of May, 1897, and lived thereon as his home until about the 1st day of January, 1909, when he with his wife and her said daughters left said property and moved to the state of California, in which state he has since resided; that he on his removal brought suit in the federal court at Waco, in the Western district of Texas, describing himself as a resident citizen of California, and that said suit is still pending and being prosecuted.

Plaintiffs in this action, Isaac A. Goldstein and Louey Migel, suing as partners under the firm name of Goldstein & Migel, recovered judgment in the county court of McLennan county on the 10th of March, 1892, against said Peter McClelland for the sum of $572.16, the costs of court and interest on said judgment at 10 per cent. per annum, which judgment was kept alive by the timely issuance of executions. On the 4th of February, 1913, said parties purchased said property at sheriff's sale for the sum of $100, which, after satisfying the costs, was credited upon the execution, and the sheriff made to them a deed to said land and premises, conveying to them all the right, title, and interest which the said Peter McClelland owned or possessed therein on January 15, 1913, which deed was thereafter duly recorded in the deed records of McLennan county. At the time of the execution of the will of Mrs. Joanna McClelland, Peter McClelland was insolvent, with several judgments outstanding against him, which was known to her. That the defendant Johnson, at the time of the levy of the execution and sale above referred to, was in possession of the property, with the knowledge and consent of Peter McClelland.

## Opinion.

[1, 2] It is insisted by appellants that said will vested no title or estate in said property in Peter McClelland, but only conferred upon him the right of personal use thereof, and that therefore appellees acquired no title by reason of said sheriff's sale and purchase thereunder. It is, however, admitted by appellants that a devise of the use and occupation of land passes an estate therein, and that it is not confined to a personal use and occupation of the property, unless the context of the will clearly calls for a more limited construction, which they contend, however is the case here. See Jarman on Wills (6th Am. Ed.) 759; Schouler on Wills, 503; 40 Cyc. 1537, 1572; Maeck v. Nason, 21 Vt. 115, 52 Am. Dec. 42. It is true that in construing a will all of its provisions should be looked to for the purpose of ascertaining the real intention of the testator. We believe that item 9 conveyed a life estate in said property to Peter McClelland, and that there is nothing in the subsequent clauses of the will, all of which, pertinent hereto, have been hereinbefore set out, that would defeat this construction; but, on the contrary, we think said clauses tend to support and uphold this view. By a subsequent clause of the will the bulk of the property had been given to Rose, in trust for the benefit of said Peter during his natural life, directing, however, that the revenues arising therefrom should be used by said trustee: First, for the purpose of preserving the property and providing for a contingent fund to restore the same in the event of loss; and, second, he was directed to pay the residue of said revenues and income, less certain commissions, to Peter McClelland, for his personal use and enjoyment. Having by item 9 given Peter the homestead, which she must have known under the law could not have been taken from him for his debts unless he should abandon it, she then provides for his maintenance and support during his life by item 11; so that, when we construe these two items together with other sections of the will, we must conclude that it was her evident intention to convey an absolute life estate, rather than a mere personal use in this property, to Peter. We therefore overrule the first assignment.

[3, 4] The homestead becomes the subject

of sale, if the same is abandoned. See Cline v. Upton, 56 Tex. 319; Reece et al. v. Renfro, 68 Tex. 192, 4 S. W. 545; Woolfolk v. Rickets, 41 Tex. 362; McElroy v. McGoffin, 68 Tex. 208, 4 S. W. 547. See, also, authorities collated in Harris' Constitution, art. 16, § 51, p. 853, under the head of Abandonment. We think the facts above recited show that, at the time of the levy upon and sale of his property, Peter McClelland had moved from the state of Texas, and had become a citizen of the state of California; for which reason said property was subject to levy and sale. Peter McClelland is not a party to this suit, and is not resisting it in person; nor does it appear that he authorized Johnson (who may be regarded as his tenant at will) so to do, for which reason appellees insist that the question of homestead is a personal privilege to be exercised only by the homesteader himself, and that this defense cannot be made by another for him. While this contention is plausible, yet no authority is cited in support thereof. This doctrine, however, seems to have been held in many states with reference to exemptions as to personal property (see 18 Cyc. pp. 1468B and 1469); but we know of no decision, and have been referred to none, applying it to homestead exemptions in this state; but, as a determination of this question is not necessary to a decision of this case, we do not undertake to pass thereon. Believing, however, that at the time of the levy, sale, and purchase thereunder the property had been abandoned as a homestead by Peter McClelland, and that the homestead exemption no longer obtained in his favor, appellants' second assignment must be overruled, and the judgment of the trial court sustained. It is therefore in all things affirmed.

Judgment affirmed.

### On Motion for Rehearing.

Counsel for appellant reassert in their motion for rehearing that the court erred in holding: First, that the will of Mrs. Joanna McClelland conveyed a life estate in the property in question to Peter McClelland; and, second, that it erred in holding that he had abandoned his homestead rights therein, citing in support of the first contention two cases not hitherto referred to, each of which we have carefully considered. We believe, notwithstanding one of said authorities supports the contention of appellant, that the weight of authority is otherwise; a few of which we think is not amiss to add to those heretofore cited.

In 40 Cyc., at page 1615, par. 3, it is said:

"A gift of the use, possession or enjoyment of property for life or sometimes without limitation in time, gives a life estate. A right to live on the property for life creates a life estate in it"—citing numerous cases in support of the text;· among others, Lewis v. Palmer, 46 Conn. 454, which holds that there is no difference between the devise of real estate for life, and a devise of the use of such real estate for life.

See, also, 40 Cent. Dig. Subject, Wills, § 1411, p. 2014.

In Beall v. Drane, 25 Ga. 430, the devise was:

"I reserve the tract —— for the use of J. W. during his natural life, or so much thereof as he can cultivate for his support, and at his death the same to revert back to my estate, but said land shall not be liable for the debts or contracts of the said J. W."

It was held that this gave J. W. a life estate in the whole tract, to be used and occupied by him for cultivation only.

In Newman v. Willetts, 52 Ill. 98, a will read:

"I leave and bequeath all the property —— of which I may die possessed to my said wife. This legacy is made in usufruct, and during the lifetime of my said wife; at her death the whole of it will revert to the children which I have or may have from said marriage."

Held, that the widow on the death of her husband took a life estate which was subject to execution.

In Davidson v. Koehler, 76 Ind. 398, the will directed that the use and occupation and the rents and profits of certain real estate should be allowed and paid for to the testator's wife during her natural life, for her support and for the support and education of his minor son, and that after her death, and after such son should attain his majority, the land should then be divided among the testator's children then living, share and share alike. Held that, on the death of the testator in 1844 in the same month as that in which the will was made, the wife took a life estate and the children a vested remainder.

In Pace v. Burlingame, 75 Hun, 432, 27 N. Y. Supp. 674, it was held that only a life estate passes under a will which provides that:

"I give and bequeath to my wife, Johanna Jones, my real estate in the town of Willett, and appurtenances thereunto belonging, together with all my household furniture, or rather the use thereof during the period that she may live and remain my widow."

In re Metcalf's Estate [Sur.] 6 Misc. Rep. 524, 27 N. Y. Supp. 879, and In re Dawborn, Id., where testatrix devised to her husband, who was also the executor of the will, the use "of all my property, both personal and real," and also provided that "I wish my property to be equally divided between my nephew and nieces" (naming them), held, that the executor took a life estate only, with remainder to the nephew and nieces.

In Schwartz v. Gehring, 7 Ohio Cir. Ct. R. 426, the words in a will " 'I give, devise and bequeath to my wife, the use of all my real and personal property * * * to be used by her during her natural lifetime,' " creates a life estate in her, so that the income which she had accumulated therefrom at the time of her death belongs to her estate and did not pass under the clause of the husband's will giving and devising after the

death of his wife "all my said real and personal estate."

A devise of two rooms in a house, "desiring that W. may have a shelter for life," gives W. an estate for life in the rooms of which she may make any disposition. It is not a mere easement for her personal convenience. See Wusthoff v. Dracourt, 3 Watts (Pa.) 240.

In 40 Cyc. 1616, § 4, it is said:

"The gift of rents, profits or income for life, although not expressly limited for life, may create a life estate."

The item in the present will "give and bequeath the homestead place to Peter McClelland to be enjoyed by him as a home to live at for and during his natural lifetime," etc. It would seem unquestionable, in view of the authorities above cited, that a life estate was created by said will, and not a mere personal use, as appellant contends. Under this clause of the will, Peter McClelland and his family moved into the property shortly after said will was probated, and lived there until 1909, when he left the state and moved with his family to California, where they still reside; after which he brought a suit in the Circuit Court of the Western District of Texas, claiming to be a citizen of California, which suit is still pending and being prosecuted by him. This, we think, shows an abandonment of his homestead rights. The question of abandonment is one for the determination of the jury or the court, in the absence of a jury, under all the circumstances of the case.

It has been held that the removal of a debtor and his family from his homestead without intention to return will destroy the right of exemption, although a new homestead is not acquired. 21 Cyc. 599, 600. See, also, Texas cases cited in notes 40 and 41 thereunder.

Where the owner of a homestead removes from the state, intending to change his place of residence, he thereby forfeits his exemption in the land upon which he resided. See Knox v. Yoe, 91 Ga. 367, 17 S. E. 654; Trawick v. Harris, 8 Tex. 312. It is true that temporary absence due to necessity, or such absence for purposes of business, pleasure, or on account of health or sending children to school, etc., will not forfeit such right. 21 Cyc. 600, 601. But if the absence is prolonged it may, however, where there is no fixed intention to return, constitute an abandonment. See 21 Cyc. 602, 603.

Generally, abandonment is almost entirely a question of intent, and does not depend upon the homesteader's doing or not doing particular acts. 21 Cyc. 603. The intent may be gathered, however, from the facts and circumstances attending the removal or absence from the homestead, as well as from the express declarations of the homesteader himself.

It is said in the same authority (page 605) that a prolonged absence will not raise a conclusive presumption that the homestead has been abandoned; but when such absence is continued for a number of years, and there is no act or circumstance which shows an intention to return and occupy the homestead, the length of absence may become a controlling circumstance. In most cases where abandonment is the issue, the person claiming the homestead exemption has usually returned with the view and for the purpose of asserting his homestead rights in the property supposed to have been abandoned; and in such cases the evidence either showed a temporary removal, or circumstances negativing the fact that the party intended to permanently abandon the property.

In the present case, Peter McClelland had not returned; he is still absent with his family in California; he is still asserting that he is a citizen of said state by the prosecution of the suit mentioned in the federal court; he is not even a party to this litigation, and, so far as the record discloses, has no intention of returning to Texas or asserting any homestead right in this property. He has been absent from the state since 1909. Soon after his removal he filed the suit in the federal court declaring that he was a citizen of California. This declaration may be regarded as continuous, since he is still prosecuting the suit as a citizen of California. There is nothing in the record to controvert the fact that his residence there is intended as permanent, and that he has abandoned his homestead in Texas. It does not even appear from the record that McClelland authorized appellant Johnson to assert homestead rights for him. The trial court has found, under these circumstances, that Peter McClelland had abandoned his homestead right in the property, and that the same is subject to levy and sale, and we do not feel disposed to disturb such finding. To hold otherwise would be to thrust the benefit of homestead upon one not asserting such claim.

[5] The appellant for the first time has suggested in his motion for rehearing that the property was sold for an inadequate price. This is not regarded as material, however, since the purchasers only obtained a life estate in the property, which may terminate at any time. The record indicates that Peter McClelland is no longer a young man. Besides, the will requires him to keep the property insured, pay the taxes, and keep the same in repair, which is a considerable charge within itself, especially when it is recalled that the property only brings a revenue of $50 per month, which may of itself furnish sufficient reason, if any is necessary, for his abandoning it as a home.

For the reasons indicated, we think the motion for rehearing should be overruled, and it is so ordered.

Motion overruled.