## WOODS *vs.* PEARCE.

1. In 1855 a slave could not acquire title in Georgia by descent or otherwise, nor could a valid trust be created in his favor.

2. The act of 1819, which provided that free persons of color could acquire and hold real estate in Georgia, except in certain cities, and that the same should remain in the owner or his or her descendants after death, contemplated that such descendants would be free persons of color. Therefore, where a free person of color died in 1855, leaving an estate and no heir save a slave, the title did not vest in him; nor did it subsequently vest upon his emancipation.

Title. Slaves. Estates. Equity. Inheritance. Before Judge WILLIS. Muscogee Superior Court. November Adjourned Term, 1881.

Reported in the decision.

CARY J. THORNTON; G. E. THOMAS, for plaintiff in error.

PEABODY & BRANNON, for defendant.

SPEER, Justice.

John Woods, the plaintiff in error, filed his bill against defendant, alleging that in 1840, his mother, Celia Woods, a person of color, was set free and emancipated in Florida, and soon thereafter removed to Columbus, in Muscogee county, of this state, and by her energy and industry accumulated a considerable estate; while she lived there and carried on her business, one Lee was her guardian or trustee, and as such held the title and possession of her estate. In the year 1852, she purchased of one Robinson the northeast corner of lot number 54, in the Coweta reserve, and lot 55, all situated in the Coweta reserve, at the Coweta Falls, on Chattahoochee river, in Muscogee county, at the price of $1,000.00. At the time of the purchase she paid through her guardian eight hundred dollars to Robinson, and Robinson made a deed in fee simple to said Lee as guardian of said Celia. She afterwards paid Robinson the balance of purchase money. That said Celia went into possession of the land and so remained till her death, which occurred in 1855. Said deed was never recorded, and the same is lost or destroyed. After the death of Celia, Lee controlled the property, and in the year 1856 sold it to Tillman J. Pearce, the defendant, for the sum of one thousand dollars, and made him a deed in his own name. That Pearce had full knowledge that Celia owned said land and died in possession, and that Lee held it as guardian of Celia. That afterwards Pearce sold the land to innocent purchasers for value, who had no knowledge of the fraud between Lee and Pearce. Afterwards complainant brought his suit in ejectment to recover said land against the parties in possession, and failed, because they were innocent purchasers, and without notice.

Complainant avers that his mother, Celia, was a slave before her emancipation in Florida, in 1840, and complain-

ant was a slave until his emancipation by the results of the late war. He avers Lee has died, and his estate was insolvent and has been fully administered. Avers Lee never sold the property as guardian at the death of said Celia for a division among her heirs, and the same has never escheated to the state. Charges that Pearce well knew how Lee held said land ; that he had no title only as guardian, but he combined and confederated with Lee to defraud the heirs and representatives of said Celia, and for this purpose he gave Lee one thousand dollars for his title, and he placed and transferred the same into the hands of innocent purchasers for value. He avers the property in the hands of Pearce was worth $1,500 00 and is now worth $5,000.00.

Complainant avers he is the child and sole heir at law of said Celia, and that he had no knowledge of the title of his mother until 1878, and no knowledge of the fraud until the year 1879, on the trial of the ejectment cause, when Pearce then promulgated it as a witness from the stand. The prayer is for Pearce to be decreed to pay complainant the value of the property with interest, and for general relief.

To this bill counsel for defendant demurred, and moved to dismiss the same, which motion the court sustained, and plaintiff in error excepted.

Taking the facts stated in the bill as true (as a demurrer is made thereto) has complainant any cause of action set forth, or right to recover under the allegations and charges of his bill?

It appears that his mother, Celia, was emancipated in 1840. By the act of 22d December, 1819 free persons of color were allowed to hold and acquire real estate in Georgia, except in the cities of Savannah, Augusta and Darien, and the statute declares " the same shall remain in the owner or in his or her descendants after his or her death." Cobb's Digest, 995. But while it is true, that under the act of 1819 real as well as personal property, thus ac-

quired by free persons of color, on their death intestate descended to their descendants or heirs at law, it was certainly contemplated that those descendants who were to take should likewise be free persons of color. But complainant was born before his mother was free, and was a slave at his birth, and so continued until emancipation. Under the laws in force at the death of Celia Woods, in 1855, in this state, no slave could acquire or hold title to property. They were chattels and could acquire no property, either by descent or purchase, and were incapable of holding such title. Their acquisitions even belonged to their owner. 25 *Ga.*, 430; 64 *Ib.*, 32.

And although this bill is filed after the complainant has been emancipated, yet at the death of his mother, when the title would have descended to him, if at all, he was a slave and incapable of inheriting or acquiring an estate of any kind. 46 *Ga.*, 399.

Neither could any valid trust be created either by contract or by operation of law for the benefit of a slave then being, and to continue to live in the state, within the limits of the state. 58 *Ga.*, 118. The rights of the complainant must be construed under the law as it existed at the death of Celia Woods in 1855, and at that time no title descended to him by reason of his incapacity to acquire or inherit it, and while it would seem just and natural that this property, the fruits of the industry and labor of the deceased mother, according to the statements in the bill, should have descended to and been enjoyed by her descendant, "yet, the mandatory requirements of the statutes in force in 1855, which must control this question, leave us no discretion."

Let the judgment of the court below be affirmed.