SOPHIA C. NEWMAN *et al.*

*v.*

WELLS WILLETTS.

1. CREDITOR'S BILL—*what constitutes, and when it may be maintained.* A creditor's bill, strictly, is a bill by which a creditor seeks to satisfy his debt out of some equitable estate of the defendant, which is not liable to a levy and sale under an execution at law.

2. To maintain such a bill, the creditor must have exhausted his remedy at law, by obtaining judgment and getting an execution returned *nulla bona*,

this being necessary to give the court jurisdiction, for otherwise it would not appear but that the party has a complete remedy at law.*

3. SAME—*and herein, of a bill to set aside a fraudulent conveyance.*—But there is another sort of creditor's bill very nearly allied to the former, by means of which a party seeks to remove a fraudulent conveyance out of the way of his execution. This he may file so soon as he obtains his judgment, and is not required to show that he could not obtain satisfaction out of other property of the defendant.

4. But a naked bill to set aside a fraudulent deed, which seeks no discovery of any property, *chose in action*, or other thing alleged to belong to the defendant, and which ought to be subjected to the payment of his judgment, is not a creditor's bill in the sense in which that term is understood and accepted, and provision for which is made by sections thirty-six and thirty-seven of our chancery code.

5. And in order to maintain a bill to set aside a fraudulent conveyance, as an obstacle in the way of collecting the complainant's judgment, it must appear the judgment was an existing lien on the property conveyed, so that where the judgment was obtained more than a year before the filing of the bill, and it did not appear that an execution had issued thereon within that time, the bill cannot be maintained.

6. WILLS—*executed and proved in other States—when admissible in evidence in this State.* Where a will executed in another State, and probated there, and the record and proceedings in respect thereto are authenticated in conformity with the act of congress of May 26, 1790, providing for the authentication of the public acts, records and judicial proceedings in each State so as to take effect in every other State, such will is admissible in evidence in the courts of this State without having been probated here.

7. Nor is it essential to support a title to land lying in this State, claimed under such a will, that the will should be recorded in the county where the land is situate.

8. SAME—*of an estate for life.* The owner in fee of a tract of land in this State devised his property as follows: "I leave and bequeath all the property, movable and immovable, of which I may die possessed, to my said wife; this legacy is made in *usufruct* and during the lifetime of my said wife, at her death the whole of which will revert to the children, which I have or may have from said marriage." *Held*, that on the death of the testator, the widow took under this devise a life estate in the land—a freehold, and under our statute subject to execution.

---

*See also, *McNab* v. *Heald et al.* 41 Ill. 326; *Heacock et al.* v. *Durand*, 42 ib. 230; *McConnel* v. *Dickson et al.* 43 ib. 100; *Horner* v. *Zimmerman et al.* 45 ib. 14. But there is an exception to the rule that an execution must issue before a creditor's bill will be entertained, in the case of proceedings against an insolvent estate. See *Steere et al.* v. *Hoagland et al.* 39 ib. 264.

APPEAL from the Circuit Court of Mercer county; the Hon. ARTHUR A. SMITH, Judge, presiding.

The opinion states the case.

Mr. B. C. TALIAFERRO, for the appellants.

Mr. T. G. FROST, Mr. J. J. TUNNICLIFFE, and Mr. J. C. PEPPER, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, exhibited in the Mercer county circuit court by Wells Willetts, and against Sophia C. Newman, Jay Martin and Martha A. Newman, to set aside a deed made by Sophia C. to J. Martin, bearing date February 11, 1861, and a deed from Jay Martin to Martha A. Newman, dated March 16, 1861, on the allegation they were made for the purpose of hindering and delaying the creditors of Sophia C. Newman in the collection of their debts, the complainant claiming to be a creditor by force of a judgment obtained by him against Sophia C. in the Mercer circuit court, at the April term thereof, 1861.

It is also charged in the bill that complainant had caused an execution to be issued on his judgment on the 5th day of October, 1861, which was returned, "no property found," on the 1st day of January, 1862; that he had caused an *alias* writ of execution to be issued on the 12th of August, 1864, which was returned on the 26th of September following, "no property found."

The defendants, severally, not under oath, answered the bill, denying all fraud, and replications were duly filed, and the cause proceeded to a hearing on the bill, answers, replications and proofs, and the court decreed that the deeds be set aside; that Sophia C. Newman had a life estate in the premises, and also a homestead right of the value of one thousand

dollars, and directing the sale of her interest in the land to pay the judgment, and that the sheriff should set off the homestead in pursuance of law.

To reverse this decree, the defendants have appealed to this court.

This bill, in the court below, was denominated a creditor's bill, and it is contended, the complainant must show he has exhausted his legal remedies before it can be sustained, and it was with that idea, on the part of the pleader, the allegation was introduced in the bill, of the issuing of an execution.

It is not a creditor's bill in the sense in which that term is understood and accepted, and provision for which is made by sections thirty-six and thirty-seven of our Chancery Code. No discovery is sought of any property, *chose in action,* or other thing alleged to belong to the defendants, and which ought to be subjected to the payment of his judgment. It is a naked bill to set aside deeds executed before the judgment was obtained, so that they shall not operate as an obstruction to an execution, on the allegation, that they were executed with a fraudulent intent.

This court said, in the case of *Weightman et al. v. Hatch,* 17 Ill. 281, where a party seeks to remove a fraudulent conveyance or incumbrance, out of the way of his execution, he may file his bill for that purpose so soon as he has obtained his judgment, and before he has made any effort to satisfy his judgment out of other property of the defendant.

The court then quotes what was said in *Miller et al. v. Davidson,* 3 Gilm. 518, where it was held, when a creditor seeks to satisfy his debt out of some equitable estate of the defendant, which is not liable to a levy and sale under an execution at law, that he must exhaust his remedy at law by obtaining judgment and getting an execution returned *nulla bona,* before he can come into a court of equity for the purpose of reaching the equitable estate of the defendant, this being necessary to give the court jurisdiction, for otherwise, it would not appear but that the party has a complete remedy

at law.  This is what may be strictly termed a creditor's bill. . But the court say, there is another sort of creditor's bill, very nearly allied to this, yet where the plaintiff is not bound to go quite so far before he comes into this court, and that is, where he seeks to remove a fraudulent incumbrance out of the way of his execution.  Then, he may file his bill so soon as he obtains his judgment.  The court proceed—whether our statute, which subjects equitable interests in land to sale on execution, has done away with this distinction, it is unnecessary now to inquire. It is enough for this case, that it came strictly within the rule that prevailed before the statute allowing the party to file his bill to remove a fraudulent conveyance, without showing that he could not obtain satisfaction out of other property of the defendant.  As to him, the conveyance being void, the creditor has a right to place himself in the same position which he would have occupied had it never been made, and first seek satisfaction out of this land.  The grantee's title being tainted by fraud, he has no right to say that all other means to satisfy the debt shall be exhausted before he could be disturbed in his title.

These views were expressed in a case where the judgment was an existing lien on the property, and they must be understood as applying to such cases only.  If a party has no lien, and the land alleged to be fraudulently conveyed, such conveyance can do him no injury,  The record, in this case, fails to show that complainant had a lien on this land, no execution having issued on the judgment within one year from its date. The presumption of law is, that the judgment was paid, and to enable the complainant to issue an execution, the judgment would necessarily have to be revived by *scire facias.*

But it is desired, by both parties, that the interest of Sophia C. Newman in this land should be definitely ascertained, so that, should the complainant, on another hearing, show he had a lien upon it, it may be subjected to that lien.

It appears the land in question was the property and farm of Erastus Newman, the husband of Sophia C.  He was a

branch pilot, following his vocation at the Balize, in the State of Louisiana, in the parish of Plaquemine, and was drowned in the Gulf of Mexico, from the upsetting of a boat, on the 21st of January, 1855. On the 20th day of October, 1850, he made his last will and testament, which was duly proved before the second judicial district court of the parish of Plaquemine, on the 14th of May, 1855. He was married to the defendant, Sophia C., in 1837, and had by her four children, living at the time of his death, Martha A. being the eldest, and the others being those named in this cause. Sophia C. was left by the will "natural tutor" of the children, and there was bequeathed to her all his property, movable and immovable, of which he died possessed, in *usufruct* during her life, and at her death, to such children as he had, or might have, from the marriage. His wife was appointed executrix, and power was given her to sell all his property at public auction, to pay his debts, and place the balance or net amount at interest for the benefit of his children.

After the will was proved, and she had procured letters testamentary, she presented her petition to the same court for an order for an inventory and appraisement of all the property belonging to the succession, and to the "community" which had existed between her and her deceased husband. The order was granted, and an inventory and appraisement filed on the 4th of June, 1855, by which it appears that the deceased Newman, was the owner, at the time of his death, of a lot of ground on the right bank of the Balize bayou, in the parish of Plaquemine, which, with the buildings and improvements thereon, was valued at six hundred dollars, and it appearing the deceased was a member of the Louisiana Pilots' Association, there was found on its books the amount of thirteen hundred and thirty dollars and ninety-two cents to his credit, amounting, in all, to nineteen hundred and thirty dollars and ninety-two cents.

This record comes certified to us as the record of the court of the second judicial district of the parish of Plaquemine,

in the State of Louisiana, and certified by the clerk of that court, under the seal of that court, on the 29th of October, 1867, and accompanied by the certificate of the presiding judge of that court, of the official character of the clerk signing the same; that his signature thereto was genuine, to which full faith and credit were due, and that his attestation was in due form, and is in entire conformity with the act of congress of May 26, 1790, entitled, "An act to prescribe the mode in which the public acts, records and judicial proceedings in each State shall be authenticated, so as to take effect in every other State."

By this act, such records and judicial proceedings authenticated, as by the act required, shall have such faith and credit given to them, in every court within the United States, as they have, by law or usage, in the courts of the State whence the records are taken. The clerk certifies that the will was proved and admitted to record in accordance with the laws of the State of Louisiana in force at the time.

This record imports absolute verity, and, by the act of congress, being properly authenticated, is evidence in the courts of all the States in the Union, and by it the fact appears that Sophia C. Newman had devised to her a life estate in all the movable and immovable property of the testator wheresoever situate. It is conceded he died seized in fee of the land in question. It is said by appellants' counsel, when this cause was before us at the April term, 1866 (48 Ill. 534), this will was held to be inadmissible in evidence, it never having been admitted to probate in this State, and that, consequently, no rights could be claimed under it. The evidence presented at that term, showed only an instrument purporting to be a will. No record of any court was offered, as now, to its execution and proceedings under it. In this case, the proof of the execution of the will is, substantially, the same as that in the case of *Shephard* v. *Carriel*, 19 Ill. 313, which was there held to be sufficient. In that case, the will was not recorded in the proper county until after the commencement of the suit in

which it was used as evidence. It is true, the will in question was not recorded in Mercer county, at the time of this trial, but it is capable of being recorded, having all the elements prescribed by section 8 of our statute of wills.

The question now is, did Sophia C. Newman take under this will? The evidence on this point is inferential only. She had the property in Louisiana inventoried and appraised, and as she was the beneficiary in that, a fair presumption is, she appropriated it. She then removed to this farm in Mercer county, where she has ever since resided, exercising exclusive dominion over it, offering to sell it, and using its avails as means of support for herself and family, and there is no pretense she ever renounced the provisions of the will for her benefit, or made any claim to dower in the land. All the circumstances conspire to show she accepted the bequests of the will, claiming the estate as bequeathed.

What was this estate? Clearly a freehold, and under our statute subject to execution, subject, however, to her homestead right, to which she is clearly entitled.

The next question is, did Sophia C. Newman convey this estate to Martin with the intent and purpose of hindering and delaying her creditors?

There is no proof there was any other creditor but the complainant, at the time the deed to Martin was made, and the proof is clear that it was made to hinder and delay him in the collection of his debt. This seems to have been the principal object of that conveyance. Martin paid no money, but gave his notes on time. He occupied the farm about one year, paying rent to Mrs. Newman, and then, on ascertaining her title was doubtful, conveyed it, at her request, to her daughter Martha, on the consideration she would furnish her mother support during her life, she, herself, however, having no means of doing so, save by the income which might be derived from the farm. It is also proved that Mrs. Newman had refused to accept her own propositions for the sale of the land, coming from parties able and willing to comply with

them.    The great body of the evidence shows that this conveyance from Mrs. Newman to Martin, and from him to Martha Newman, were made with the intent to hinder and delay complainant in the collection of his debt.

Upon the point raised by appellant that there was no proof Mrs. Newman was insolvent at the time she executed this deed, it is sufficient to say the evidence is ample, that she had no available means sufficient to pay a debt exceeding eight hundred dollars, which was the extent of complainant's claim. About this there can be no dispute.

As, however, the record fails to show the judgment in question was a lien on the land, there was error in removing the obstruction created by the deed, and subjecting the land to the payment and satisfaction of the judgment. On another trial, complainant may be able to show the judgment was a subsisting lien, by showing an execution issued within one year.    There was no error in directing the sheriff to set off to Mrs. Newman a homestead in the premises, in pursuance of the statute, and not exceeding in value one thousand dollars.

For the reasons given, the decree must be reversed and the cause remanded.

*Decree reversed.*