EDWIN M. HARRISON et al.

v.

THOMAS WEATHERBY et al.

*Opinion filed June 17, 1899.*

1. CONFLICT OF LAWS—*rule as to validity of instruments affecting title to land.* The validity, construction, force and effect of instruments affecting title to land depend upon the law of the State where the land lies; and this rule includes wills, and the form and mode of the execution thereof, as well as the power of the testator to make the particular disposition therein contained.

2. WILLS—*statutory requirements necessary to entitle will to probate.* Under the statute of Illinois a will, in order to be entitled to probate, must be reduced to writing, signed by the testator and attested by two or more credible witnesses, two of whom shall declare that they saw the testator sign or that he acknowledged the signature in their presence, and that they believe him to have been of sound mind and memory.

3. SAME—*foreign will is not effectual unless section 9 of the act on wills is followed.* Wills made and proven in other States are "good and available in law, in like manner as wills made and executed in this State," only when the proceedings in relation to the authentication thereof are in compliance with section 9 of the act on wills.

4. SAME—*when recorded copy of foreign will is not constructive notice.* A copy of a foreign will, though recorded in Illinois, is not constructive notice of the will, unless it is authenticated and certified in the manner required by section 9 of the act on wills.

5. SAME—*how copy of foreign will must be authenticated.* An "authenticated copy" of a foreign will, within the meaning of section 9 of the act on wills, is one bearing a certificate, made by the judge of the court where the will was probated, that the attestation of the clerk is in due form, as provided by the act of Congress concerning the authentication of records.

6. SAME—*effect of devise for life with remainder to children of life tenant not yet born.* Where a devise is made giving a life estate to the testator's daughter with a contingent remainder to her children not yet in being, and no other disposition is made of the fee, the fee vests in the testator's heirs subject to being divested by the birth of the contingent remainder-men, and this is true although the life tenant herself is the sole heir. (Contrary expressions in *Madison* v. *Larmon,* 170 Ill. 65, overruled.)

APPEAL from the Circuit Court of Adams county; the Hon. JOHN C. BROADY, Judge, presiding.

A copy of the will and of the certificates appended thereto, which is referred to in the opinion in this case, is as follows:

"I, Richard Smith, of the city of Raleigh, county of Wake and State of North Carolina, being of sound mind and memory, do make and ordain this to be my last will and testament, as follows, viz., to-wit:

"*Item First*—It is my will and desire that the whole of my estate, both real and personal, be divided between my wife and daughter, Mary Ann Smith, as the laws of the State have and are made and provided, believing those laws make as equitable and fair a division as I can make, with the following proviso and exceptions, to-wit: It is my will and desire that my wife, Penelope Smith, who will be entitled to the one third of all the personal estate to her and to her heirs forever, and her third or dower of all the real estate during her natural life.

"*Second*—I also give and bequeath to her, to do as she pleases with, one equal half of all the net profits of my estate, both real and personal, for her maintenance and support as long as she live and require it.

"*Third*—I give and bequeath to my daughter, Mary Ann Smith, who will be entitled to the other two-thirds of all my estate, both real and personal, the other one equal half of all the net profits of my estate, both real and personal, for her maintenance and support, the care and management of which, and collections of the same, is to be managed by her mother and not to be paid over to her until it is collected, unless her mother chooses to do so, which I leave to her discretion.

"*Fourth*—I give and bequeath to my daughter, Mary Ann Smith, all the rest and residue of my estate, both real and personal, as the laws of the State allows, and not given away in either of three items of my will above, with the following provisos and exceptions, intended by me for her especial benefit and protection,—that is, she is to have the one-third of her portion, if she requires it,

for her support and maintenance and do as she pleases
with; the other two-thirds I only lend to her in trust, to
be managed by the county court of Wake and superior
court and courts of equity of said county as trustees for
her and her heirs forever, allowing to her and her heirs
the net income of the said two-thirds aforesaid, after the
decease of her mother; and if the courts aforesaid should
not act in the capacity of a trustee, as before desired,
then it is my will and desire for either of said courts to
appoint some safe and competent person or persons from
time to time, to act as trustee, and the court is to make
such order and decree as to them may appear fair and
proper, and may require such sureties of said trustees as
to them may appear proper.   If such trustees are ap-
pointed they are not permitted to diminish, but it is to
remain as a separate and special and trust fund for her
benefit and her heirs forever, she receiving the net profits
after the decease of her mother, as mentioned in another
clause of this will, for and during her natural life, and
then to such of her child or children as she may have
or leave surviving her.   I do not make this provision to
deprive her or her husband, if she marries, from the free
use and enjoyment of the fruits of my labor and industry,
but to provide as far as I can for her and her children
against any misfortune that might happen, and which I
am legally advised is proper.

"*Fifth*—The whole of my estate I wish to be kept as
much together as the case will admit, though I make no
positive item to that effect, and the whole of my servants
to be treated well and provided for, except such as may
become refractory and unruly, and if so, they may be sold.

"It is my first request that all my just debts be paid
out of the first avails of my estate.  Having been careful
to keep out of debt, it is my wish to owe little or nothing
at my decease, but no doubt some small charges or debts
will have to be paid, which may be paid out of any moneys
I have at the time of my demise.

"Written by myself and pronounced by me to be my last will and testament and signed in my own proper handwriting, and preferring not to have any subscribing witnesses, as the laws provide, as good or better proof of any person's handwriting making a will, and I file this my will among my most valuable papers, revoking or disannulling all or any other wills made by me, if any should appear, and pronouncing this to be my last and only will and testament.

"Given under my hand and seal this 10th day of October, A. D. 1851.                    RICHARD SMITH.  [Seal.]"

"Codicil to this my will:

"It is my wish and desire that the Black Lead Plumbago mine, which I own now, one-half of the same may never be sold, but kept in perpetuity for my estate, but small part or parts of the lands that may not be material to keep may be sold if necessary, but no part or parts of the mines.                    RICHARD SMITH."

October 10, 1851.

"*Item Sixth*—I hereby appoint my wife executor to this my last will and testament, and request her to call on such friends to aid her as she may find desirable.

October 10, 1851.                    RICHARD SMITH.  [Seal.]"

"THE STATE OF NORTH CAROLINA.

"*To all to these presents shall come, Greeting:*—Be it known that James J. Marriott, whose name, in his own proper handwriting, is subscribed to the annexed certificate, is, and was at the time of granting the same, clerk of the county court for Wake county, and that his said certificate is in due form.

"*In witness whereof*, His Excellency, David S. Reid, our Governor, captain-general and commander-in-chief, hath signed with his hands these presents, and caused our great seal to be affixed thereto, on the fifth day of April, in the year of our Lord one thousand eight hundred and fifty-three, and in the seventy-seventh year of our independence.          By the Governor:  DAVID S. REID.
          SAMUEL F. ADAMS, *Private Secretary.*"

"Wake County Court—November Sessions, A. D. 1852.
A paper writing purporting to be the last will and testament of the late Richard Smith, deceased, of the city
of Raleigh, is exhibited in court and propounded for probate by Penelope Smith, the executrix therein nominated,
as the last will and testament of the deceased, altogether
in the handwriting of the supposed testator, and found
at his death among his valuable papers, and the same is
duly proved and declared by the court to be the last will
and testament of the said Richard Smith and ordered to
be recorded as such. Whereupon the said Penelope Smith
is duly qualified as executrix thereto, and license is given
by the court to the executrix to sell the perishable estate.

[Seal.]        Attest: JAMES J. MARRIOTT, *Clerk.*"

"STATE OF NORTH CAROLINA, }
  *Wake County.*          }

"I, James J. Marriott, clerk of the court of pleas and
quarter sessions for the county of Wake aforesaid, do
hereby certify that the foregoing is a true and correct
copy of the last will and testament of Richard Smith,
deceased, and also of the probate and proceedings had
in court therein, and which said will was proved according to the laws of this State.

"In testimony of all which I have hereunto affixed the
seal of said court and subscribed my name at my office in
Raleigh, this 11th day of January, 1853.'

[Seal.]        JAMES J. MARRIOTT, *Clerk.*"

G. EDMUNDS, and J. H. WILLIAMS, for appellants:

At the time of the probate of the will of Richard Smith,
and its record with the probate thereof, in this State, the
only place appointed by law for such record was in the
office of the county clerk of the county where the land
was situated, and said will and probate, properly certified, being recorded as averred in the bill, were notice
that Richard Smith did not die intestate, but died testate,
and of the contents, force and effect of the will. Hurd's

Stat. chap. 148, sec. 9; Rev. Stat. 1845, chap. 148, sec. 8; *Shephard* v. *Carriel*, 19 Ill. 313; *Gardner* v. *Ladue*, 47 id. 211; *Newman* v. *Willetts*, 52 id. 98.

By item 4 of the will in question the testator gives to his daughter, Mary A., all the rest and residue of his estate, both real and personal, with the following provisos and exceptions: "She is to have one-third of her portion, if she requires it, for her support and maintenance and do as she pleases with; the other two-thirds I only lend to her in trust," (to be managed by courts or trustees,) "allowing to her and her heirs the net income of the said two-thirds after the decease of her mother, * * * to remain as a separate and special trust fund for her benefit and her heirs forever, she receiving the net profit * * * for and during her natural life, and then to such of her child or children as she may have or leave surviving her." These provisions constitute a life estate in Mary A., with remainder to her children and their descendants in fee, but in default of children of Mary A. to take the fee, reverts to the next of kin, as heirs of the testator. 2 Blackstone's Com. 110-113; 4 Kent's Com. 221; *Butler* v. *Huestis*, 68 Ill. 594; *Voris* v. *Sloan*, id. 588; *Blair* v. *Vanblarcum*, 71 id. 290; *Frazer* v. *Supervisors*, 74 id. 282.

If this was a conveyance by Richard Smith to Mary A., his daughter, containing the same provisions as contained in the will, and Richard and his wife, Penelope, had survived Mary A. and she had never had children at her death, the fee of the land would revert to Richard, and not descend to Richard and Penelope, as heirs of Mary A., upon her death. 2 Blackstone's Com. 210-213; *Frazer* v. *Supervisors*, 74 Ill. 282; *Butler* v. *Huestis*, 68 id. 594; *Voris* v. *Sloan*, id. 588; *Blair* v. *Vanblarcum*, 71 id. 290.

The fee of this two-thirds did not vest immediately upon the death of Richard Smith, but was and remained suspended, as said in *Voris* v. *Sloan*, 68 Ill. 592, or remained in abeyance, as said in *Frazer* v. *Supervisors*, 74 Ill. 285, which is the same thing. *Lewis* v. *Pleasants*, 143 Ill. 271;

*Lewis* v. *Barnhart,* 145 U. S. 56; *Blair* v. *Vanblarcum,* 71 Ill. 290.

When a person entitled to an estate in remainder or reversion, expectant on a freehold estate, dies during the continuance of the particular estate, the remainder or reversion does not descend to his heirs, because he never had a seizin to render him the stock or root of an inheritance, but it will descend to the person who is heir to the first purchaser of such remainder or reversion at the time when it comes into possession. 3 Cruise's Digest, chap. 4, sec. 2.

As to two-thirds of the land, the possession under the deed to Green could not, during the life of Mary A., become adverse, and this suit is brought within seven years after her death. *Lewis* v. *Barnhart,* 145 U. S. 56; *Higgins* v. *Crosby,* 40 Ill. 260; *Dugan* v. *Follett,* 100 id. 581; *Lewis* v. *Pleasants,* 143 id. 272; *Mettler* v. *Miller,* 129 id. 630; *Orthwein* v. *Thomas,* 127 id. 554.

ARNOLD & GALE, also for appellants:

The important question is to determine the intention of the testator. *Whitcomb* v. *Rodman,* 156 Ill. 116.

This must be ascertained from the whole will, and all its parts must be considered in connection with each other. *Lunt* v. *Lunt,* 108 Ill. 307; *Dickison* v. *Dickison,* 138 id. 541; *Osborn* v. *Bank,* 116 id. 130.

If a testator give an estate "with the exceptions and conditions herein set forth," the estate so given will be subject to those exceptions. *Rickner* v. *Kessler,* 138 Ill. 636; *Giles* v. *Anslow,* 128 id. 187; *Healy* v. *Eastlake,* 152 id. 424.

If two clauses are inconsistent, the latter controls the former. *Hamlin* v. *Express Co.* 107 Ill. 443.

Where two constructions are possible, one legal and the other illegal, the former must prevail. *Fussey* v. *White,* 113 Ill. 637.

Where a testator creates a life estate and then disposes of the fee by a contingent remainder which is void

or for any reason fails, then the fee, the attempted disposition by contingent remainder failing, goes as intestate property to the testator's heirs-at-law. But it goes not to the heirs-at-law at the time of the testator's death, but to his heirs-at-law at the time of the death of the life tenant. *Madison* v. *Larmon,* 170 Ill. 68.

THOMPSON & DONAHUE, for appellees Jane Stewart, R. G. and Mary Thompson, and others:

Where a contingent remainder is created by devise, the fee in the meantime, if not otherwise disposed of, descends to the testator's heirs-at-law and vests in them as if the testator had died intestate, subject, however, to being divested on the contingent remainder-men 'coming into being; but if the tenant for life is the sole heir, and the contingent remainder fails, the tenant for life becomes the absolute owner, and any disposition of the fee made by the tenant for life and sole heir becomes absolute when it is definitely ascertained that the contingent remainder fails. *Robinson* v. *Palmer,* 90 Me. 249; *Bell's Appeal,* 147 Pa. St. 389; *Joslin* v. *Hammond,* 10 Eng. Ch. 109; 3 M. & K. 109; *Robinson* v. *Ostendorf,* 18 S. C. 72; *Bigley* v. *Watson,* 98 Tenn. 353; *In re Kenyon,* 17 R. I. 149; *Halloway* v. *Halloway,* 5 Ves. Jr. 399; *Rand* v. *Butler,* 9 H. L. 1; *Say* v. *Creed,* 5 Hare, 508; *Mortmer* v. *Slater,* 7 Ch. Div. 322; *Mortimore* v. *Mortimore,* 4 App. Cas. 448; *Harris* v. *McLaren,* 30 Miss. 533; *Cusack* v. *Rood,* 24 W. R. 391; *Coots* v. *Yewell,* 95 Ky. 367; *Kellett* v. *Shepard,* 139 Ill. 433; *Stokes* v. *VanWych,* 83 Va. 724; *Tompkins* v. *Verplank,* 10 App. Div. (N. Y.) 572; *Rochell* v. *Tompkins,* 1 Strob. Eq. 114; *Carter* v. *Bomandister,* 1 P.Wms. 506; *Purefoy* v. *Rogers,* 3 Saund. 380; *Archer case,* 1 Rep. 66*b*; *Plunkett* v. *Holmes,* 1 Liv. 11; 1 Sid. 47; *Hooker* v. *Hooker,* Cas. t. H. 13; *Kent* v. *Harpoll,* 1 Vent. 306; *Doe* v. *Scudmore,* 2 B. & P. 294; *Wood* v. *Ingresole,* Cro. Jas. Corth. 206; *Davis* v. *Speed,* Corth. 262; *Lougheed* v. *Dykemans,* 129 N. Y. 211; *Luddington* v. *Kinne,* 1 Salk. 224; *Clere's case,* 6 Rep. 17*b*; *Lovie's case,* 10 id. 70; *Miller* v. *Miller,* 10 Metc.

393; *Kingbury* v. *Scovel,* 26 Conn. 349; *Armstrong* v. *Geardin,* 39 Ohio St. 368.

CHARLES K. LADD, for Freemont Bates and thirty-six other appellees:

The copy of the will and the probate thereof, as filed, were not properly authenticated, because certified to by the Governor of the State instead of the presiding judge. Rev. Stat. U. S. 171; *Craig* v. *Brown,* Pet. C. C. 352; *Pope* v. *Cutler,* 24 Mich. 152; *Stewart* v. *Gray,* Hempst. 94; *Wilt* v. *Cutler,* 38 Mich. 198; *Stephenson* v. *Bannister,* 3 Bibb, 369; *Buford* v. *Hickman,* Hempst. 232; *Triggs* v. *Conway,* id. 538; *Keith* v. *Keith,* 97 Mo. 227; *Barr* v. *Closterman,* 2 Ohio C. C. 388; *Newman* v. *Willetts,* 52 Ill. 97; *Shephard* v. *Carriel,* 19 id. 313.

The facts in the certificate of probate are conclusive, and therefore the certificate of probate must be full enough to enable the court in the State where the property is located to determine if the will was properly executed, proved and probated in the foreign State as a will of real estate, in conformity with the laws of that State. *Barr* v. *Closterman,* 2 Ohio C. C. 388; *Williams* v. *Jones,* 14 W. P. D. Bush, 420; *Robertson* v. *Pickrell,* 109 U. S. 608; *Shephard* v. *Carriel,* 19 Ill. 318.

A foreign will must be executed in the manner prescribed by the statutes of Illinois in order to be a valid devise of real property in this State. Story on Conflict of Laws, (8th ed.) 651-657; 3 Am. & Eng. Ency. of Law, (1st ed.) 563-565; *Ford* v. *Ford,* 70 Wis. 19; *Keith* v. *Keith,* 97 Mo. 228; *Lockwood* v. *Lockwood,* 51 Hun, 337; *Robertson* v. *Pickrell,* 106 U. S. 608; *McCormick* v. *Sullivant,* 10 Wheat. 192; *Kingsbury* v. *Burnside,* 58 Ill. 312; *Williams* v. *Jones,* 14 W. P. D. Bush, 420; *Williams* v. *Mans,* 31 Am. Dec. 467; *Wills* v. *Cooper,* 2 Ohio, 124; *Hosford* v. *Nichols,* 1 Paige, 220.

When a will conveys real estate it must be conveyed and attested in accordance with the law of the State where the property is situated. *Ford* v. *Ford,* 70 Wis. 19;

*Staigg* v. *Atkinson*, 4 N. E. Rep. 851; *Dickey* v. *Vann*, 81 Ala. 425; *Hunt* v. *Mootrie*, 3 Bradf. 351; *West* v. *Fitz*, 109 Ill. 428; *White* v. *Howard*, 46 N. Y. 144.

Where a testator by apt words devises an absolute estate in fee simple, he cannot, by subsequent provisos and restrictions, cut that absolute estate down to an estate for life. *Stevenson* v. *Fox*, 125 Pa. St. 568; *Quackenbos* v. *Kingland*, 102 N. Y. 128; *Richards* v. *Miller*, 62 Ill. 417; *Jones* v. *Port Huron Engine Co.* 171 id. 502; *Steib* v. *Whitehead*, 111 id. 247; *Mandlebaum* v. *McDonnell*, 29 Mich. 78; *Anderson* v. *Carey*, 36 Ohio St. 506; *Norris* v. *Hensley*, 27 Cal. 439; 13 Am. & Eng. Ency. of Law, 794; 29 id. 369; *Chaplin* v. *Doty*, 60 Vt. 712; *Stowell* v. *Hastings*, 59 id. 494; *Wicker* v. *Ray*, 118 Ill. 472; *Hageman* v. *Hageman*, 129 id. 164.

The fee or inheritance is never in "abeyance," but remains vested either in the devisor or the devisor's heirs, if undisposed of, until the contingency occurs upon which it is to again vest. Black's Law Dic.; Fearne on Contingent Remainders, 351-360; 1 Am. & Eng. Ency. of Law, (2d ed.) 182; 2 Minor's Inst. (3d ed.) 75, 388, 389; *Coots* v. *Yewell*, 95 Ky. 369; *Gilpin* v. *Williams*, 25 Ohio St. 283; *Herbert* v. *Herbert*, 85 Ky. 134; 4 Kent's Com. 257; *Floyd* v. *Herring*, 64 N. C. 411.

STEVENS, HORTON & ABBOTT, and JACK & TICHENOR, for appellees John and Joseph C. Friedman, William C. Friedman, Caroline Hoffer, Caroline Friedman, John P. Vogel, Richard Harding, and all other appellees named in the decree:

· Deeds and wills to pass real estate must be executed as required by our laws. *Insurance Co.* v. *Bank*, 68 Ill. 348; *Head* v. *Thurber*, 142 id. 430; *Heyer* v. *Alexander*, 108 id. 385; *McCartney* v. *Osburn*, 118 id. 403.

A will may be good for some purposes and not for others. *Devecmon* v. *Devecmon*, 43 Md. 335; *Lake* v. *Warner*, 34 Conn. 483; *Hilliard* v. *Binford*, 10 Ala. 977; *Guthrie* v. *Owen*, 2 Humph. 202.

A will not executed as required by law has no force as a will, under our statute. *Highland* v. *Highland*, 109 Ill. 366; *Rigg* v. *Wilton*, 13 id. 15; *Comer* v. *Comer*, 120 id. 420; *Cline* v. *Jones*, 111 id. 563; *Barnum* v. *Reed*, 136 id. 383; *Bovee* v. *Hinde*, 135 id. 137.

The validity and legal effect of a will must be determined by the place where it is sought to give it force. *Lockwood* v. *Lockwood*, 51 Hun, 337; *Roth* v. *Michalis*, 125 Ill. 325; *Nelson* v. *Potter*, 21 Vroom, 324; *Colton* v. *Colton*, 127 U. S. 309; *Lindley* v. *O'Reilly*, 50 N. J. L. 636.

The will in question being unattested, is insufficient for the purpose of passing title to real estate in this State. Statute of Wills, sec. 2; *Rigg* v. *Wilton*, 13 Ill. 15; *Dickie* v. *Carter*, 42 id. 376; *Cline* v. *Jones*, 111 id. 136; *Kerr* v. *Moon*, 9 Wheat. 565; *Bovee* v. *Hinde*, 135 Ill. 137; *Comer* v. *Comer*, 120 id. 420; *Barnum* v. *Reed*, 136 id. 383; *Robertson* v. *Pickrell*, 109 U. S. 608; *United States* v. *Crosby*, 7 Cranch, 115; *McCormick* v. *Sullivant*, 10 Wheat. 192.

GRIER & STEWART, for appellees John Campbell, John S. Mason, John C. Fulton, Mary A. Davidson, Dion Davidson, Francis Davidson, D. J. Davidson, Annis Davidson, Daniel Laughlin, Frank Meleney, James W. Fulton, T. M. Boydstun and Jane Boydstun:

A holographic will will not convey title to real estate in this State. The title to real estate in this State must be controlled by our own laws. *Keegan* v. *Geraghty*, 101 Ill. 26; *Stoltz* v. *Doering*, 112 id. 234.

Where the statute requires certain things to be done in order to convey title, those things must be done. *Lindley* v. *Smith*, 46 Ill. 523.

Wills made and proven out of this State are only "good and available in law, in like manner as wills made and executed in this State," when certified as provided in section 9 of the Statute of Wills. Here, the will and its probate were not entitled to record in this State under the defective certificates. *Lewis* v. *Barnhart*, 145 U. S. 56.

B. F. THOMPSON, for appellees George Murray and Robert Hunter.

A. P. MILLER, for appellees I. L. Stimmell, Virginia Brady, F. B. Brady, Missouri Griffin and Frank Stimmell:

Where an estate in fee is devised by one clause of a will, any subsequent clause limiting the estate given in the preceding clause of the will is void. *Wolfer* v. *Hemmer*, 144 Ill. 554; *Jones* v. *Port Huron Engine Co.* 171 id. 502; *Wilson* v. *Turner*, 164 id. 398.

The fact that the gift or devise must open to let in after-born children is not inconsistent with the vesting of the estate in interest at the testator's death, though the vesting in possession is deferred to the period of distribution. *McCartney* v. *Osburn*, 118 Ill. 403.

When a bequest is made to one or more for life, remainder to the testator's heirs or next of kin, or such persons as would take his estate by the rules of law if he had died intestate, the bequest is to those who are heirs or next of kin at the time of death. 2 Williams on Executors, (Perkins' 6th Am. ed.) p. 1212, note *d.*

N. F. ANDERSON, for appellee Samuel Ekstadt.

NEECE & SON, WYAND & BROWN, SHARP & BERRY BROS., and SCOFIELD, O'HARRA & SCOFIELD, for appellees Otto S. Turner, Harlan S. Robbins, Alvie Hall, Milton Keenan, Andrew Allison, Eva L. Gustin, Bertie L. Monger and Sarah E. Hudson:

Where the will may be fairly construed to pass all of the testator's property, no presumption can be indulged of an intention to die intestate as to any part or interest or estate therein. *Howe* v. *Hodge*, 152 Ill. 253; *Whitcomb* v. *Rodman*, 156 id. 116.

A will cannot give a fee and take it away at the same time. If such a contradictory disposition of property is attempted, the first clause, which gives the fee, is given

effect, and the second clause, which takes it away, is held to be void for repugnance. *Fairman* v. *Beal*, 14 Ill. 244; *Welsch* v. *Bank*, 94 id. 203; *Hamlin* v. *Express Co.* 107 id. 448; *Wolfer* v. *Hemmer*, 144 id. 554; *Wilson* v. *Turner*, 164 id. 398.

The fourth clause of the will of Richard Smith is void, as creating a perpetuity. *Post* v. *Rohrbach*, 142 Ill. 600.

By the first part of the fourth clause of the will Mary Ann Smith is given the fee in all the real estate, and this cannot be cut down by subsequent provisions, except by unambiguous terms. *Roberts* v. *Roberts*, 140 Ill. 345.

The fee in lands must abide somewhere. A reversion is transferable when vested. 2 Blackstone's Com. 175.

Wills concerning land must be executed according to the prescribed formalities of the State in which the land is situated. 4 Kent's Com. 513; 1 Jarman on Wills, 1; Story on Conflict of Laws, sec. 474; 2 Greenleaf on Evidence, sec. 670; 3 Am. & Eng. Ency. of Law, 632, 633; *Robertson* v. *Pickrell*, 109 U. S. 608.

C. C. CRAIG, for appellees Stephen Wyman and William Coffman:

The will of Richard Smith, under which appellants claim, is not such an instrument as will pass title to real estate in Illinois, no matter what its effect was in the State where made. If it did not affect the lands in this State then such lands descended as intestate property according to our laws of descent, viz., to the only child, Mary Ann Smith, subject to her mother's dower interest. Their subsequent deed to Green conveyed all their interest. Rev. Stat. chap. 148, sec. 2.

Section 9 of the act on wills requires that foreign wills, to be entitled to record, "shall be accompanied with a certificate of the proper officer or officers," etc. The proper officers referred to, and the manner of the certificate, undoubtedly must be such as required by the United States laws relating to the authentication of records. (Rev. Stat. U. S. sec. 905; Hurd's Stat. 1874, p. 87.)

That portion of the same relating to this case is as follows: "The records and judicial proceedings of the courts of any State or territory shall be proved or admitted in any court within the United States by the attestation of the clerk and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice or presiding magistrate that the said attestation is in due form."

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This case comes up from an order of the court below sustaining a demurrer to the bill and dismissing it for want of equity. Therefore, as to the facts we are confined to the allegations of the bill. Both appellants, who were complainants below, and appellees, who were defendants below, claim title under one Richard Smith, who, in his lifetime, was a resident of Wake county in the State of North Carolina, and died testate in that State in the year 1852. A copy of his will, dated October 10, 1851, is attached to the bill, and referred to therein as an exhibit. Richard Smith left surviving him a widow, named Penelope Smith, and one child only, a daughter named Mary A. Smith, his only heir-at-law. The widow is dead, and the daughter, who married one Morehead after the execution of the deed hereinafter mentioned, died on January 4, 1891, leaving no issue, and without having had any child or children. Morehead is also dead. At the time of his death Richard Smith owned in fee thirty-five quarter sections of land situated in Adams, Pike, Calhoun, McDonough, Schuyler, Fulton, Peoria, Stark, Knox, Warren, Henderson, Mercer and Henry counties in Illinois.

On February 20, 1856, Penelope Smith and Mary A. Smith executed a warranty deed to one Silas T. Green of Richmond, Kentucky, conveying to him all the lands in Illinois, which Richard Smith owned at his death, de-

scribing them as "all those certain tracts of land situated in the military bounty land district in the State of Illinois." The grantors in the deed are described as "Penelope Smith, widow, and Mary A. Smith, only child, together sole heirs of Richard Smith, deceased, late of Raleigh, North Carolina." A copy of the deed is referred to in the bill and attached thereto as an exhibit. The deed contains no reference whatever to any will of Richard Smith, and no intimation that the grantors held as devisees, or otherwise than as heirs of a deceased intestate. The deed to Green was recorded in many of the counties where the lands are situated. After Green had conveyed away "most, if not all, of said lands" he died in Kentucky where he lived, and left certain persons as his heirs, who are made defendants under the name of unknown owners.

The appellees, defendants below, hold under Green, and claim that the deed, executed by Penelope Smith and Mary A. Smith to Silas T. Green in 1856, passed the title to the lands to Green, and that they, as holding under Green, are the owners of all of said lands. On the contrary, appellants claim that, under the will of Richard Smith, his daughter, Mary A. Smith, took an absolute title to only an undivided one-third part of all his lands, including those in Illinois, and had merely an interest as life tenant in the remaining undivided two-thirds of said lands. The appellants allege in their bill, that the fee of the said two-thirds remained in abeyance until the determination of the life estate of Mary A. Smith, and then descended to the heirs-at-law of Richard Smith, the testator, his brothers and sisters and their descendants, and vested in those, who survived Mary A. Smith at her death, and is now held by them as tenants in common. Appellants claim to be the heirs-at-law of Richard Smith, who were such at his daughter's death in 1891, or to hold under or through such heirs-at-law.

The contention of the appellants is, that the deed from Mrs. Smith and her daughter to Green conveyed to him

the fee simple title to an undivided one-third of the lands, and the life estate of Mary A. Smith in the other undivided two-thirds thereof, but did not convey to him the fee of said two-thirds; that, since the death of Mary A. Smith in 1891, and the termination thereby of her life estate, the grantees of Green, or those holding under him in any way, have no further interest in said two-thirds; and that the two-thirds of the lands are now owned by the appellants, as tenants in common with those holding the other third under the deed from Green.

Upon the theory thus stated, that appellants are the owners of two-thirds and appellees of one-third of these lands, the present amended and supplemental bill was filed against appellees for partition on February 16, 1898, more than seven years after the death of Mary A. Smith. The original bill appears to have been filed on January 3, 1898, but there is no copy of it in the record, and nothing to show what its contents were.

There were two codicils to the will. The amended and supplemental bill, which was demurred to below and dismissed, alleges that the "will and codicils thereto were duly probated in the proper court for the probate of wills in said county of Wake, North Carolina." But the certificates appended to the copy of the will, attached to the bill as an exhibit leave it in doubt whether the proceedings for the probate of the will were taken in the county court for Wake county, or in the court of pleas and quarter sessions for that county.

The bill further alleges that, during all the time from the execution of the deed to Green on February 20, 1856, until the death of Mary A. Green on January 4, 1891, a period of nearly thirty-five years, Green, his grantees and assigns, remained and continued in the control and management of said lands; that neither the appellants, nor any of the heirs of Richard Smith, had any right of possession, or right of entry into or control over said lands until after the death of Mary A. Smith; and that,

until that time, it was the duty of her grantees and those of Green to pay the taxes.

The abstract of the record as filed here does not correctly set forth paragraph 7 of the bill. The abstract represents orators as showing, "that, soon after the death of said Richard Smith, said will and codicils of said Richard Smith, together with the probate thereof, were recorded in the several counties in the State of Illinois in which said lands respectively lie." Paragraph 7, as found in the record, is as follows: "Your orators further show unto your honors, that the said will of the said Richard Smith, deceased, together with the codicils thereto, were, soon after the death of the said Richard Smith, duly probated in the proper court for the probate of wills of Wake county, North Carolina, and a copy thereof, together with the probate, was duly recorded in the several counties in the State of Illinois in which said lands respectively lie."

Between 1849 and 1857 foreign wills and the probate of them could only be filed in Illinois in the office of the county clerk. An act passed in 1857 authorized them to be filed in the office of the recorder of deeds. The foregoing allegation of the bill is technically inaccurate in averring merely, that the copy was recorded in the several counties, without stating whether it was so recorded in the county clerk's office or in the recorder's office, and in omitting to state that the copy so recorded was an authenticated copy.

*First*—If it be admitted for the present, that the construction placed by appellants upon the will of Richard Smith is the correct one, the first question, which arises, is whether the copy of the will and of the certificates appended thereto, as recorded in Illinois, had the effect of passing the title to the lands in the latter State. The claim of appellants to these lands, if valid, must be made out under and based upon the copies of the will as recorded in Illinois. If it were true, that the will gave Mary A. Smith nothing but a life estate in two-thirds of

the lands, and that the fee of such two-thirds did not vest immediately upon the death of the testator, but remained in abeyance until the death of his daughter, and, at her death without issue, reverted to the next of kin or heirs-at-law of the testator, was the will, with its probate and certificates, as recorded in Illinois, 'good and available in law for the granting of the fee of two-thirds of the Illinois lands to the next of kin, or heirs-at-law of Richard Smith, who were alive at the time of his daughter's death?

The validity and construction, as well as the force and effect, of all instruments affecting the title to land, depend upon the law of the State where the land is situated. This rule includes wills, as well as deeds, contracts or agreements; and it includes the form and mode of the execution of the will, as well as the power of the testator to make the devise or disposition of property contained in the will. (*West* v. *Fitz*, 109 Ill. 425; *McCartney* v. *Osburn*, 118 id. 403; *City Ins. Co. of Providence* v. *Commercial Bank of Bristol*, 68 id. 348; *Wunderle* v. *Wunderle*, 144 id. 40; *Ford* v. *Ford*, 70 Wis. 44; *Robertson* v. *Pickrell*, 109 U. S. 608; *McCormick* v. *Sullivant*, 10 Wheat. 192; *Darby* v. *Mayer*, 10 id. 465).

Under the statute of this State, a will, in order to be entitled to probate, must be reduced to writing, and signed by the testator, and attested by two or more credible witnesses, two of whom shall declare that they saw the testator sign it in their presence, or acknowledge the same, and that they believe him to be of sound mind and memory. (*Dickie* v. *Carter*, 42 Ill. 376; *Crowley* v. *Crowley*, 80 id. 469; *Canatsey* v. *Canatsey*, 130 id. 397). "A paper, that has not thus been subscribed and witnessed, has no force or effect as a will under our statutes." (*Rigg* v. *Wilton*, 13 Ill. 15). Section 2 of the act in regard to wills provides, "that every will, testament or codicil, when thus proven to the satisfaction of the court, shall, together with the probate thereof, be recorded by the clerk of said court, in a book to be provided by him for that purpose, and shall be good and available in law for the granting, con-

veying and assuring the lands, tenements and heredita-
ments, annuities, rents, goods, and chattels therein and
thereby devised, granted and bequeathed." (3 Starr &
Curtis' Stat.—2d ed.—p. 4026).

The will of Richard Smith does not conform to the
requirements of our statute as above indicated. The cer-
tificates, accompanying the copy which is attached to the
bill, show it to be a holographic will, that is to say, a
will written, dated and signed entirely by the testator's
own hand, and unattested by any witness. (26 Am. &
Eng. Ency. of Law, 127). Richard Smith lived in North
Carolina, and his will was made there. It is claimed by
appellants that the will was a valid one under the laws
of North Carolina, and was duly admitted to probate in
that State, where Smith died.

In order to sustain their claim, appellants must show,
that such an authenticated copy of the will, as is required
by section nine (9) of the act in regard to wills, has been
recorded in this State. Said section 9 is as follows: "All
wills, testaments and codicils, or authenticated copies
thereof, proven according to the laws of any of the United
States, or the territories thereof, or of any country out
of the limits of the United States, and touching or con-
cerning estates within this State, accompanied with a
certificate of the proper officer, or officers, that said will,
testament, codicil or copy thereof was duly executed and
proved, agreeably to the laws and usages of that State
or country in which the same was executed, shall be re-
corded as aforesaid, and *shall be good and available in law, in
like manner as wills made and executed in this State."* (3 Starr
& Curtis' Stat.—2d ed.—4040). Wills made and proven
out of this State are only "good and available in law, in
like manner as wills made and executed in this State,"
when the proceedings in relation to the authentication
thereof are in compliance with section 9.

It is not alleged in the bill, that the appellees, or
Green, under whom they hold, had any actual notice of

the will of Richard Smith, or that the same was recorded in Illinois.    By alleging, however, that a copy of the will was recorded in Illinois, it is impliedly charged, that Green or appellees had constructive notice of the will. But the copy, as recorded, did not operate as constructive notice, unless it was authenticated and certified in the manner required by section 9.    (*Lewis* v. *Barnhart*, 145 U. S. 79; *Safford* v. *Stubbs*, 117 Ill. 389; *Rohn* v. *Harris*, 130 id. 525; *McCormick* v. *Sullivant*, 10 Wheat. 192; *Keith* v. *Keith*, 97 Mo. 223; *Slaton* v. *Singleton*, 9 S. W. Rep. (Tex.) 876).

Much discussion is indulged in by the various counsel engaged in the case as to the meaning of section 9.   It is claimed by one or more of the counsel for appellees, that section 9 merely provides the manner of proving a will in this State, which has already been admitted to probate by the proper court of another State or country, and had its origin in the general rule that wills once admitted to probate cannot thereafter be removed from the files of the court where probated; that section 9 simply dispenses with original proceedings and was not intended to confer any validity upon a foreign will that would be invalid under our law.   It is also contended, that the certificate of the clerk, attached to the copy of the will, is defective in not stating that the will was executed, as well as proven, according to the laws of North Carolina. A discussion of these contentions is unnecessary to the decision of this case, though it may be said that some doubt is cast upon their correctness by the decisions of this court in *Gardner* v. *Ladue*, 47 Ill. 211, and *Shephard* v. *Carriel*, 19 id. 313.

We are, however, of the opinion for another reason than either of those above indicated, that the copy of the will, as recorded here, did not comply with the requirement laid down in section 9.   That section provides that "authenticated copies" of foreign wills shall be recorded, in order that they may have the same effect in passing title to lands in this State, as is given to the recording

of domestic .wills by said section 2    Section 9 requires that the will shall be proven according to the laws of the foreign State, territory or country, and that the will or copy must be accompanied by a certificate as to its due execution and proof; but, in addition to such proof and certificate, the copy of the will must be an authenticated copy.    How must it be authenticated?    We can conceive of no other meaning here intended by the legislature than such authentication as is prescribed by the act of Congress in relation to the authentication of records. (*Newman* v. *Willetts*, 52 Ill. 98).    The act of 1790, or section 905 of the Revised Statutes of the United States, provides that "the records and judicial proceedings of the courts of any State or territory shall be proved or admitted in any court within the United States by the attestation of the clerk and the seal of the court annexed, together with a certificate of the judge, chief justice or presiding magistrate that the said attestation is in due form."

The certificate here, that the attestation of the clerk is in due form, is made by the Governor of the State, acting through his private secretary, and not by the judge, chief justice or presiding judge of the court in North Carolina where the will was admitted to probate.    Such a certificate is insufficient.

The act of 1804, or section 906 of the Revised Statutes of the United States, provides for the certificate of the Governor of the State as to certain records "not pertaining to a court."    The probate of a will, however, is a judicial proceeding, and the record of the will and its probate are matters which "pertain to a court."

It follows, that the copy of the will of Richard Smith, as recorded in Illinois, did not have the effect of passing title to the land in this State, because the certificate of attestation attached to such copy is fatally defective in that it is made by the Governor of the State, and not by the judge of the probate court in North Carolina.    It is to be noted, that this will contains no description of any

particular land. It is general in its terms, and contains no words to indicate that the testator owned land in Illinois, or anywhere else outside of North Carolina. If the record of the copy of such a will is to operate as constructive notice of an alleged title to Illinois lands not described therein, the statute, which gives it such an effect, must be literally complied with.

*Second*—If, however, we are wrong in the view above expressed, and the copy of the will of Richard Smith was properly proven, certified, authenticated and recorded, the question arises, what is a proper construction of the provisions of the will? It was written by the testator himself, apparently without the advice of legal counsel, and is therefore inartistically drawn. Its provisions are somewhat obscure, and perhaps inconsistent with or repugnant to each other.

As has often been said, the important question to determine, in construing a will, is what is the intention of the testator? (*Whitcomb* v. *Rodman*, 156 Ill. 116). This intention must be ascertained from the whole will; and all of its parts must be considered in connection with each other. (*Lunt* v. *Lunt*, 108 Ill. 307; *Dickison* v. *Dickison*, 138 id. 541; *Osborn* v. *Jefferson Nat. Bank*, 116 id. 130).

If these rules of construction be applied, it clearly appears that the testator intended to give the whole of his estate, both real and personal, to his wife, Penelope Smith, and his daughter, Mary Ann Smith. The first item of the will begins as follows: "It is my will and desire that the whole of my estate, both real and personal, be divided between my wife and daughter, Mary Ann Smith, as the laws of the State have and are made and provided, believing those laws make as equitable and fair a division, as I can make, with the following proviso and exceptions, to-wit," etc. It seems to be conceded by counsel on both sides, that the laws of North Carolina in regard to the descent of property, at the time when the will was made, were substantially the same, as are the laws of

Illinois upon that subject. Consequently, as Mary Ann
Smith was the only child of the testator, Richard Smith,
she, as his heir, would inherit the whole of the real estate
owned by him, subject to the dower of her mother; and
one-third of the personal property would belong to the
widow and two-thirds thereof to the daughter.. By the
provisos and exceptions in the first three items of the
will, the widow was to take, instead of what the law
would thus allow her, one-half the net profits of the whole
estate, both real and personal, for her maintenance and
support during her life, and the daughter was to take
the other half of the net profits for her maintenance and
support during the life of her mother.

It is claimed by one or more of the counsel for appel-
lees, that the first three items of the will dispose of the
whole of the estate, and that, therefore, the fourth item,
which professes to give and bequeath all the rest and
residue of the estate, is void, because there was no resi-
due left to be given. It is also contended by some of the
counsel for appellees, that, if there was a residue remain-
ing, which was disposed of by the fourth item, the latter
item attempted to create a perpetuity by tying up the
property in the hands of trustees for a longer period than
the law allows, and that, for this reason, the fourth item
is void. We are inclined to think, however, that when
all parts of the will are considered together, these con-
tentions will be seen to be without force.

After giving the use of the net profits of the estate,
one-half to the widow during her life, and one-half to the
daughter during the life of the widow, the fourth item
then proceeds to dispose of the estate at the mother's
death by giving one-third thereof absolutely to the daugh-
ter, and by disposing of the remaining two-thirds by
placing the same in the hands of trustees, who are not
permitted to diminish the same; and "it is to remain as
a separate and special and trust fund for her benefit and
her heirs forever, she receiving the net profits after the

decease of her mother, as mentioned in another clause of this will for and during her natural life, and then to such of her child or children as she may have or leave surviving her."

It is apparent, that the most material question in the case is, where did the fee in the undivided two-thirds, in which Mary Ann Smith is said to have had a life estate merely, go upon the death of the testator? It is claimed by the appellants, that Mary Ann Smith had only a life estate in the two-thirds, with fee in her children, if she died leaving any; and that the fee rested in abeyance until her death, and, if she should die childless, then the fee in such two-thirds reverted to the heirs of Richard Smith, who were living at the death of Mary Ann Smith. It is conceded, that Mary Ann Smith died never having had any child or children. We do not regard this construction of item 4 of the will as the correct one.

Either the fee of the undivided two-thirds remained in the testator and was not disposed of by the provisions of the will, or such fee vested in Mary Ann Smith, sole heir of the testator, subject to be divested upon her having or leaving surviving her a child or children. If the fee did not pass by the terms of the will, then it was intestate estate, and went to Mary Ann Smith, as the only child and heir of the testator. If this is the correct view, then by the deed, which Mary Ann Smith and her mother executed to Silas T. Green in 1856, the fee passed to Green, and through him, and his grantees and assigns, to the present appellees. The doctrine of the authorities is, that, in such cases as this, the fee title does not rest in abeyance during the continuance of the particular estate and before the birth of children, but that it vests in the heir-at-law *ad interim*, subject to be divested by the birth of persons who can take under the will. Having thus vested in the heir-at-law upon the death of the testator, it remains there unless divested by parties who can take under the will.

When a devise is made giving a life estate to the testator's daughter and a contingent remainder in fee to her children not yet in being, and no other disposition is made of the fee, the fee descends to the testator's heirs as intestate property; and it so remains as a vested estate in fee simple until the contingency happens. The heirs in such a case take the estate, subject to the condition of being divested on the contingent remainder-men coming into being. In the case at bar, the testator gave his daughter a life estate and a contingent remainder to her children, and made no disposition of the reversion. Therefore, the testator either died intestate as to two-thirds, or his daughter took the fee under the will, determinable upon her death having had issue, or with issue living. It makes little practical difference, whether she took the fee under the will, or whether the residuary estate, being undevised, went to her by operation of law. As she died without issue, and without having had issue, the fee simple became absolute, and, as she conveyed to Green during her life, the latter, and his grantees and assigns, held an absolute, indefeasible title in fee simple. The fact that, in such cases, the life tenant may be the sole heir, does not prevent the vesting of the estate in her, but it passes to her as her property, subject only to the condition or possibility of contingent remainder-men coming into being.

There is nothing in the will of Richard Smith to indicate, that he intended any of this property to pass to his brothers and sisters or their descendants. He makes no mention whatever of them, but his sole object is to provide for his daughter and for her children, if she should have any. The weight of authority is against the position, that where a particular estate is devised and a contingent remainder is provided for, the fee remains in abeyance. Where a grant is made by way of use or by devise, the fee remains in the grantor, or passes to his heirs as intestate property. It will be found, as a general thing, that where the fee is held to be in abeyance,

the contingency is not created by will or by grant by the way of use.

The case at bar is almost on all fours with the case of *Kellett* v. *Shepard*, 139 Ill. 433, where the will of a testator gave his daughter a life interest in a certain share of the estate, and then provided, that "after her death it shall descend and go in reversion to her child or children, should she have any, but in case she died having no issue, in such case to go to and descend in reversion to my heirs-at-law." There, the life estate ended, and the tenant for life died without issue, and it was held that the heirs-at-law were the persons, who answered that description at the death of the testator, and not at the death of the life tenant. And it was there said (p. 442): "The word 'heir,' in its strict and technical import, applies to the person or persons appointed by law to succeed to the estate in case of intestacy. * * * This construction or definition is not changed by the fact, that a life estate may precede the bequest to the heirs-at-law, nor by the circumstance that the bequest to the heirs is contingent on an event that may or may not happen. * * * The reversionary estate, vested in the heirs-at-law at the testator's death, was liable to open to let in her children in case she should have any, but in the meantime it subsisted in the heirs for the purpose of drawing the possession to them in the event of her death without children. The law always gives preference to vested over contingent remainders. It does not favor the abeyance of estates." (*Grimmer* v. *Friederich*, 164 Ill. 245; *McConnell* v. *Stewart*, 169 id. 374).

In *Kellett* v. *Shepard*, *supra*, the testator in one part of his will provided for no disposition whatever of the one-half of the residue in the event of his daughter's death without issue; and it was there said, that, in such case, the law would give the share, at the death of the daughter without children, to those who were the testator's heirs-at-law at his decease. In *Bates* v. *Gillett*, 132 Ill. 287,

we said (p. 295): "According to the modern doctrine, there being no person *in esse* to take, the remainder vested, upon the death of the testator, in his heirs-at-law, subject to be divested when the will became operative as to such remainder. Primarily, the vesting of the remainder, under the will, depended upon the birth of children of the body of Sophronia. If she had died without issue, the estate would have descended, as intestate estate, to the heirs-at-law of the testator."

Where a testator creates a life estate, and then disposes of the fee by a contingent remainder, which is void, or for any reason fails, then the fee goes as intestate property to the testator's heirs-at-law, not to those who are the heirs-at-law at the time of the death of the life tenant, but to those who are the heirs-at-law at the time of the testator's death. So far as the adopted opinion of the circuit court in *Madison* v. *Larmon*, 170 Ill. 65, lays down a contrary rule, such opinion must be regarded as here changed and modified to conform to the views here announced.

The views hereinbefore expressed are sustained by the weight of authority.

In *Bell's Estate*, 147 Pa. St. 387, it was held as follows: "If an intestacy occurs by reason of the failure of a contingent remainder where there is no limitation over, the next of kin and heirs entitled to take the estate are to be ascertained as of the date of the death of the testator, and not at the date of the determination of the contingency; and the fact, that the person, to whom the particular estate was given, though his death was to precede the ultimate limitation, is himself an heir, does not change the result."

In *Gilpin* v. *Williams*, 25 Ohio St. 295, the Supreme Court of Ohio say: "We shall therefore dispose of the case upon the theory, that the only estate in these lands which passed to the trustees, was an estate for the natural life of Euretta, and remainder in contingency to her children,

the contingency being that she will die leaving children surviving her. The right, by means of which the real owner of the fee will eventually come into possession of this property as an estate of inheritance, is vested in some person or persons awaiting the event which will unite the right of property and the right of possession in the same person or persons. We do not believe it is in abeyance, or that it rests *in nubibus*. It is clear that it is not in Euretta—her only title is to an estate for her natural life; nor in her children—she has none. It is not in the trustees, as we have assumed. The fee simple title was in the testator until his death, and if it did not pass by his will to any devisee therein named, it either ceased to exist in any one, or it passed by way of descent to his heirs-at-law. In our opinion, it descended to the heirs; subject, however, to be divested, by force of the will, in the event that Euretta shall die leaving children; but subsisting in the meantime in the heirs, for the purpose of drawing the possession to them in the event of her death without children. This right in the heirs is an estate in reversion. It is the residue of the whole estate as owned by their father not disposed of by his will. When the reversion takes place, the heirs will hold by virtue of the title which descended to them at the time of his death, and not by virtue of any new title acquired by purchase. And although their estate may divest upon the happening of an uncertain event, it is now, nevertheless, a vested right. After much consideration upon this point, we are content to adopt the doctrine as stated by Mr. Fearne, in his work on Remainders, chapter 6, page 351, namely, 'that where a remainder of inheritance is limited in contingency by way of use, or by devise, the inheritance in the meantime, if not otherwise disposed of, remains in the grantor and his heirs, or in the heirs of the testator, until the contingency happens to take it out of them.'" (See, also, *Stokes* v. *Van Wyck*, 83 Va. 724; *Coots* v. *Yewell*, 95 Ky. 367; *Nightengale* v. *Burrell*, 15 Pick.

104; *Harris* v. *McLaren*, 30 Miss. 533; *In re Kinyon*, 17 R. I. 149; *Bigley* v. *Watson*, 98 Tenn. 353; *Joslin* v. *Hammond*, 3 Myl. & K. 109; *Robinson* v. *Palmer*, 90 Me. 246; *Hills* v. *Barnard*, 152 Mass. 67; *Rand* v. *Butler*, 48 Conn. 293).

We are of the opinion, that Mary Ann Smith took a fee simple title in the land of her father, which was determinable by her having or leaving children at her death, and which became absolute upon her death without having had and without leaving any child or children.

The will of Richard Smith, which is now under consideration, was construed by the Supreme Court of North Carolina at the June term, 1855, before the execution of the deed by Mrs. Smith and her daughter to Green, in the case of *Winder* v. *Smith*, 47 N. C. 327, where the Supreme Court of North Carolina say: "The devisor was manifestly *inops concilii*, and his will requires all the aid, which can be derived from that consideration, to enable us to carry out his presumed intention. Looking at the whole will and endeavoring to give effect to every part of it, as it is our duty to do, we are led to the conclusion that by the fourth clause the devisor has given to his daughter, Mary Ann, an estate in fee in all his real estate, subject to the dower of her mother therein, with an executory devise in fee, in two-thirds thereof, to her children, should she marry and die leaving issue. The devise is, in form, rather a gift to her for life, with a contingent remainder in fee to her children, and upon default of children, remainder to her and her heirs; but the legal effect of it is as we have above stated."

While the construction given to this will by the Supreme Court of North Carolina is not binding upon us, so far as it applies to real estate in Illinois, yet it presents a view of the matter, which leads substantially to the same result as that above announced. The North Carolina Court holds, as we understand the decision, that the children of Mary Ann Smith did not take as heirs of her body, and, therefore, the estate in her was a fee simple

determinable upon the happening of a certain contingency, namely, having or leaving children at her death, which contingency never happened, and therefore the fee remained in her. Under this view, the title passed by the deed made in 1856 to Green, the remote grantor of ·the appellees, and his heirs and assigns.

Our conclusion is, that the appellees, who hold under Mary Ann Smith, either by the deed executed to Green or otherwise, are the owners of the fee simple title to the property; and that the remainder in the two-thirds thereof did not pass to the heirs-at-law or next of kin of Richard Smith, who were surviving at the time of the death of Mary Ann Smith in 1891.

Accordingly, the decree of the circuit court, sustaining the demurrer and dismissing the bill, is affirmed.

*Decree affirmed.*